OPINION OF THE JUSTICES TO THE HOUSE
OF REPRESENTATIVES.

*Alcoholic Liquors,* License. *Constitutional Law,* Due process of law, Equal protection of laws, Police power, Retirement of liquor license.

Enactment of a 1975 legislative bill stating that it shall take effect in 1980, the dominant purpose of which is to eliminate vertical integration of the wholesale and retail levels of the liquor industry, and providing that no holder of a wholesaler's license under G. L. c. 138, § 18, shall hold a retailer's license under § 15, would not be an unconstitutional impairment of property rights without due process as to a holder of both licenses who is required to divest himself of one of them before 1980. [862-864]

In a pending legislative bill intended to eliminate vertical integration of the wholesale and retail levels of the liquor industry, and providing that "[n]o person" who holds a wholesaler's liquor license under G. L. c. 138, § 18, shall hold a retailer's liquor license under § 15, further provisions assimilating to a person holding a license certain relatives defined as the "immediate family" of the licensee, and, in the case of a corporate licensee, identifying with it any person who, with his "immediate family," owns more than ten per cent of the corporate stock, are designed to prevent indirect frustration of the object of the bill, and the classifications created have a rational basis vitiating any claim of unconstitutional violation of the right to equal protection under the law by persons or corporations excluded from holding a license.    [864-865]

In a pending legislative bill intended to eliminate vertical integration of the wholesale and retail levels of the liquor industry, provisions requiring wholesalers licensed under G. L. c. 138, § 18, to maintain a ten mile marketing territory, to offer alcoholic beverages for sale to all licensed retailers within that area, regularly to advertise by trade journal or direct mailing, and to employ salesmen licensed to solicit orders from retail licensees promote the objective of the bill and would not constitute an unconstitutional impairment of wholesalers' rights to equal protection and due process. [865-866]

On July 29, 1975, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit the following answers to the questions set forth in an order adopted by the House on May 20, 1975, and transmitted to us on May 28, 1975. The order recites that there is pending before the General Court a bill, House No. 1488, entitled "An Act prohibiting a wholesaler from holding a retailer's license under the alcoholic beverage control laws," and that grave doubt exists as to its constitutionality if enacted into law. A copy of the bill, the full text of which is set out in the margin,[1] was transmitted with the order.

---

[1] "SECTION 1. Section 18 of chapter 138 of the General Laws, as most recently amended by chapter 520 of the acts of 1973, is hereby further amended by striking out the last sentence of the fourth paragraph and inserting in place thereof the following four paragraphs: —

"No person who holds a license under this section shall hold or be granted a license under section fifteen. A person shall be deemed to hold a license under this section and section fifteen if such person or any member of his immediate family holds a license under each of said sections. As used in this section the words 'immediate family' shall include the licensee and his spouse and their parents, children, brothers and sisters, and their spouses.

"Violation of the provisions of this section shall be cause for the revocation of all licenses held by the licensee or his immediate family.

"In the case of a corporate licensee any person or his immediate family who owns more than ten per cent of the stock of such corporation shall be deemed to be the licensee for the purposes of this section.

Under the bill, the provision of G. L. c. 138, § 18, which now permits a licensed wholesaler also to hold a retailer's license, would be repealed, effective January 1, 1980, and would be replaced by a prohibition on such double holdings, the penalty for a violation to be the revocation of all licenses held. For the purposes of the bill, a person is deemed to hold a license if a member of his immediate family, or a corporation in which he or his immediate family owns more than ten per cent of the stock, holds the license. The bill sets out a number of practices which a holder of a wholesaler's license would have to follow in order to retain his license. These practices will be described as necessary below; taken together, they may be characterized as intended to assure that one holding a wholesaler's license conducts a bona fide wholesale business, and in particular does not retain intimate ties to particular retailers in preference to others.

The questions are:

"1. Would the enactment of House, No. 1488 which requires any person or corporation presently holding

"In order to qualify as a wholesaler and importer under this section, any wholesaler and importer holding a license hereunder shall (1) maintain licensed premises which are separated so that there shall be no commingling of alcoholic beverages for sale under a section fifteen license and those for sale under a section eighteen license; (2) offer for sale within a marketing territory, which shall be not less than a radius of ten miles from the licensed premises, alcoholic beverages to all retail licensees located within said area; (3) regularly advertise by trade journal or direct mail in accordance with such regulations as may be adopted by the commission all alcoholic beverage items purchased by such wholesaler and importer which it offers for sale; (4) employ salesmen licensed to solicit orders from retail licensees; (5) remit to the commonwealth pursuant to the provisions of section twenty-one excises in an amount not less than one hundred dollars per month and (6) have as its primary business purpose to offer for sale to retail licensees under this chapter such alcoholic beverages as it purchases in the normal course of business. The commission shall revoke, after hearing, the license of any wholesaler and importer who fails to comply with any of the standards set forth in this paragraph.

"SECTION 2. This act shall take effect on January first, nineteen hundred and eighty."

licenses under the provisions of Section 15 and Section 18 of Chapter 138 of the General Laws to divest himself or itself of some of their licenses prior to July 1, 1980 be an unconstitutional impairment of their property rights without due process?

"2. Would the enactment of said bill which excludes persons defined as 'immediate family' in said bill from holding or obtaining licenses under the provisions of Section 15 and Section 18 of said Chapter 138 be an unconstitutional violation of such person's right of equal protection under the law?

"3. Would the enactment of said bill which excludes corporations, in which persons defined as 'immediate family' own more than 10% of the stock of such corporation, from holding or obtaining licenses under the provisions of Section 15 and Section 18 of said Chapter 138, be an unconstitutional violation of such corporations' right of equal protection under the law?

"4. Would the enactment of said bill which requires the holder of license under the provisions of Section 18 of said Chapter 138 to provide a marketing area of over 10 miles and to offer for sale alcoholic beverages to all retail licensees within its marketing area be an unconstitutional impairment of such licensee's right to equal protection and due process?

"5. Would the enactment of said bill which requires the holder of a license under the provisions of said Section 18 of said Chapter 138 to regularly advertise by trade journal or direct mailing be an unconstitutional impairment of such licensee's right to equal protection and due process?

"6. Would the enactment of said bill which requires the holder of a license under the provisions of said Section 18 of said Chapter 138 to employ salesmen licensed to solicit orders from retail licensees be an unconstitutional

impairment of such licensee's rights to equal protection and due process?" [2]

1. In considering the constitutionality of economic legislation under the due process clause, our task is to decide whether the apparent objective of the legislation is rationally related to the promotion of the public safety, health, morals, or general welfare, or is merely arbitrary, *Mobil Oil Corp.* v. *Attorney Gen.* 361 Mass. 401, 413 (1972), and if there is such a rational relationship, whether the means selected to achieve the objective are supportable in reason. *Commonwealth* v. *Henry's Drywall Co. Inc.* 366 Mass. 539, 543-544 (1974). *Williamson* v. *Lee Optical of Okla. Inc.* 348 U. S. 483, 487-488 (1955). We are not to pass on the wisdom of the measure. *122 Main St. Corp.* v. *Brockton,* 323 Mass. 646, 649 (1949). *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138-139 (1949). Correspondingly, our task in reviewing such legislation under the equal protection clause is confined to determining whether the classification involved rationally furthers a legitimate State purpose. *Commonwealth* v. *Henry's Drywall Co. Inc.,* *supra,* at 545. *McGowan* v. *Maryland,* 366 U. S. 420, 425 (1961). Finally, with respect to the present bill, it should also be recalled that the Twenty-First Amendment to the United States Constitution gives the States especially wide latitude in regulating the liquor industry. *Joseph E. Seagram & Sons, Inc.* v. *Hostetter,* 384 U. S. 35, 42 (1966). *California* v. *LaRue,* 409 U. S. 109, 114, 118 (1972).

2. Proceeding to an examination of House No. 1488, we observe that its dominant purpose is to eliminate vertical integration of the wholesale and retail levels of the liquor in-

---

[2] In response to our invitation to interested persons to file briefs, the following filed briefs or other memoranda: the Attorney General, Joseph R. Gabrielle (president of Western Massachusetts Package Stores Association and vice president of Massachusetts Package Stores Association), Massachusetts Beverage Association, Silenus Wines, Inc., and Wine and Spirits Wholesalers of Massachusetts.

dustry. The "tied house" has been dealt with in the statutes of many States as an evil to be avoided.[3] A Legislature might reasonably accept the contention that protection of smaller retailers, and ultimately the consuming public, calls for measures to prevent economic power at the wholesale level being transferred to the retail level; that protection of independent wholesalers, and thus the encouragement of the availability of a wide variety of products at the retail level, with ultimate benefits to the consumers, also calls for preventive measures; and that prohibiting the same person from holding both wholesale and retail licenses is an appropriate preventive device. Legislation on these lines cannot be pronounced unconstitutional. Accord, *Borman's Inc.* v. *Liquor Control Commn.* 37 Mich. App. 738 (1972), leave to appeal den. 387 Mich. 772 (1972); *Carling Brewing Co.* v. *New Hampshire State Liquor Commn.* 102 N. H. 284 (1959); *Affiliated Distil. Brands Corp.* v. *Sills,* 56 N. J. 251 (1970), judgment amended 60 N. J. 342 (1972).

The first question asks, more specifically, whether it is an unconstitutional impairment of property rights without due process to require relinquishment by 1980 of either wholesale or retail licenses by persons holding both.[4] We might answer the question briefly by pointing to those authorities declaring that liquor licenses confer no property rights on the licensees. See *Hooper* v. *Duncan,* 95 Ariz. 305 (1964), app. dism. 379 U. S. 27 (1964); *Pickerill* v. *Schott,* 55 So. 2d 716 (Fla. 1951), cert. den. 344 U. S. 815 (1952);

---

[3]See, e.g., Ariz. Rev. Sts. 4-243 subpar. 2 (a), 4-244 subpar. 8 (1974); Ark. Anno. Sts. § 48-309 (1964); Mich. Comp. Laws Anno. § 436.19d (2) (Supp. 1975-1976); Mo. Sts. Anno. § 311.070 (1963); N. H. Rev. Sts. Anno. §§ 181:21, 181:26, 181:27 (1964); N. J. Sts. Anno. § 33:1-43 (Supp. 1975-1976); McKinney's Consol. Laws of N. Y. Anno. § 101-a (1970); Ohio Rev. Code Anno. § 4301.24 (1975); Okla. Sts. Anno. c. 37, § 535 (Supp. 1974-1975); Wis. Sts. Anno. § 176.05 (1a) (a) (1974).

[4]While the bill recites that the prohibition is to take effect January 1, 1980, the first question speaks of divestiture by July 1, 1980. This discrepancy is of no consequence to our opinion.

*Sepe* v. *Daneker,* 76 R. I. 160 (1949). In the same connection we might note that our own statute, G. L. c. 138, § 23, as amended through St. 1973, c. 1009, says explicitly: "The provisions for the issue of licenses and permits . . . imply no intention to create rights generally for persons to engage or continue in . . . the business authorized . . . but are enacted with a view only to serve the public need and in such a manner as to protect the common good." See *Jubinville* v. *Jubinville,* 313 Mass. 103, 106 (1943); *Opinion of the Justices,* 349 Mass. 794, 797-798 (1965).[5] Thus, in *Opinion of the Justices, supra,* the Justices stated that it would be permissible for the General Court to revoke all liquor licenses, or all liquor licenses of a particular class, without compensation.[6]

Our opinion, however, need not rest on this ground. By G. L. c. 138, § 23, a liquor license may be transferred by its

---

[5] And see G. L. c. 138, §§ 11, 11A, permitting a city or town to forbid taverns or package stores within its limits.

[6] It may be suggested that the erasure in recent years of the distinction between "rights" and "privileges" for constitutional purposes, see Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439 (1968), as exemplified in cases considering whether one who is receiving a benefit from the government is entitled to a hearing before its revocation, see, e.g., *Goldberg* v. *Kelly,* 397 U. S. 254 (1970), means that liquor licensees are entitled to like protection against the taking of their licenses. But cases like *Goldberg* v. *Kelly* are aimed at protecting the individual against a taking based on an erroneous finding of fact; the cases have made clear that the individual is not protected against a general change of governmental policy which deprives an entire class of benefits. See *Merriweather* v. *Burson,* 325 F. Supp. 709 (N. D. Ga. 1970), revd. on other grounds, 439 F. 2d 1092 (5th Cir. 1971) (per curiam); *Provost* v. *Betit,* 326 F. Supp. 920 (D. Vt. 1971); *Rochester* v. *Ingram,* 337 F. Supp. 350 (D. Del. 1972), revd. on other grounds sub nom. *Rochester* v. *Baganz,* 479 F. 2d 603 (3d Cir. 1973); *Whitfield* v. *King,* 364 F. Supp. 1296, 1301-1302 (M. D. Ala. 1973); *State ex rel. Ellis* v. *Heim,* 83 N. M. 104 (1971); Note, Procedural Due Process in Government-Subsidized Housing, 86 Harv. L. Rev. 880, 897-898, n. 89 (1973). This view accords with that expressed in *Opinion of the Justices, supra,* where the Justices said, as indicated in text, that all licenses, or all in a class, could be revoked without compensation, but also stated that individual licenses could not be revoked arbitrarily.

holder to a qualified party if the licensing authority decides that the transfer is in the public interest. And as noted in *Jubinville* v. *Jubinville, supra,* at 107, "a license has been considered by purchasers of . . . [a liquor] business as something of value in excess of the license fee." The bill before us appears to recognize this fact, and, by delaying its own effective date to 1980, gives those persons who would be affected by the ban on simultaneous holding of wholesale and retail licenses ample time to dispose of licenses at a fair price. Accordingly, we perceive no taking of property without compensation. Nor can it be convincingly argued that the requirement that licensees dispose of licenses is itself an unconstitutional impairment of property rights, since it is axiomatic that property rights in businesses are not absolute but are subject to reasonable regulation within the police power. See *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 319 Mass. 301, 302-303 (1946); *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138-139 (1949); *Mobil Oil Corp.* v. *Attorney Gen.* 361 Mass. 401, 413 (1972); *Nebbia* v. *New York,* 291 U. S. 502, 523 (1934); *Borman's Inc.* v. *Liquor Control Commn.* 37 Mich. App. 738, 751-752 (1972), leave to appeal den. 387 Mich. 772 (1972).

Accordingly, we answer question 1, "No."

3. Questions 2 and 3 ask, respectively, whether it would be a violation of the equal protection clause to assimilate persons defined as the "immediate family" of the license holder (his spouse, parents, parents-in-law, children, siblings, the spouses of his children or siblings) to the licensee himself for the purpose of determining whether dual licenses are held, and whether it would be a constitutional violation, in the case of a corporate licensee, to identify any person who, with his immediate family, owns more than ten per cent of the corporate stock with the corporation for the purpose of the bill. It is apparent that the object of these provisions is to prevent the achievement, by indirection, of that vertical integration at which the prohibition of direct ownership of wholesale and retail licenses by a single

individual is aimed. The right to engage in a particular business is not a fundamental one, *Commonwealth* v. *Henry's Drywall Co. Inc.* 366 Mass. 539, 542 (1974), nor are the classifications involved suspect ones. Cf. *San Antonio Independent Sch. Dist.* v. *Rodriguez*, 411 U. S. 1, 17 (1973). As noted, we can see a rational basis for the classifications, one which furthers a legitimate State interest. The classifications need not be those which would commend themselves to an outsider as a perfect solution; the General Court has broad discretion in deciding how to attack a problem. See *Williamson* v. *Lee Optical of Okla. Inc.* 348 U. S. 483, 489 (1955); *McGowan* v. *Maryland*, 366 U. S. 420, 425 (1961).

Accordingly, we answer questions 2 and 3, "No."

4. The last three questions are addressed to the validity, as a matter of due process and equal protection, of three of the provisions of the bill which would regulate the conduct of wholesale liquor businesses. These provisions (numbers [2]-[4] in the fourth new paragraph to be added to G. L. c. 138, § 18) would require that a wholesaler shall: offer alcoholic beverages for sale to all retail licensees within its marketing territory, which territory shall be not less than the area within a radius of ten miles from the wholesaler's licensed premises; regularly advertise by trade journal or direct mail, in accordance with regulations to be issued, all alcoholic beverages purchased by it which it offers for sale; and employ salesmen licensed to solicit orders from retail licensees. These provisions, joining with others in the bill, appear to be designed to assure that wholesalers shall not maintain ties to particular retailers to the exclusion of, or in preference to, other retailers. Thus they promote the elimination of vertical integration of the industry; their specific role may well be to assure that, after a particular vertical integration is broken by means of transfer of license, it shall not continue as a business practice by understandings between the now formally unrelated licensees. In the light of what has been said above about the constitutional

standards to be applied, we answer questions 4, 5, and 6, "No."

We need hardly add that this opinion is perforce limited to the bill "on its face"; it cannot exclude the possibility that a provision of the bill, although constitutional on its face, may operate in an unconstitutional manner when applied to some particular state of facts not now envisaged. See *Cambridge Elec. Light Co.* v. *Department of Pub. Util.* 363 Mass. 474, 493 (1973).

G. JOSEPH TAURO
PAUL C. REARDON
FRANCIS J. QUIRICO
ROBERT BRAUCHER
EDWARD F. HENNESSEY
BENJAMIN KAPLAN
HERBERT P. WILKINS