Commonwealth *v.* Gustafsson.

COMMONWEALTH *vs.* EVERT GUSTAFSSON.

Suffolk.    December 3, 1975. — April 27, 1976.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

*Mobile Home. Statute,* Construction. *Constitutional Law,* Due process of law, Case or controversy.

It was incorrect for a trial judge to rule on the constitutionality of a statute which was not material to the equity suit before him, and the judgment passing thereon must be vacated. [185-186]

On appeal by the plaintiff only from the judgment in a suit in equity, the defendant was not foreclosed from seeking to sustain the judgment on a theory rejected by the trial judge. [186]

G. L. c. 140, § 32L, cls. 1 and 6, as appearing in St. 1973, c. 1007, § 2, prohibiting the licensee of a mobile home park from promulgating rules governing the rental or occupancy of a mobile home lot which are "unfair," "unreasonable," "unconscionable" or "deceptive," are not so indefinite and vague as to offend the due process clause of the Federal Constitution. [186-188]

It was error for the trial judge in a suit in equity by the Commonwealth against a mobile home park owner to rule that G. L. c. 140, § 32M, inserted by St. 1973, c. 1007, § 2, granting a tenant a right to sell his mobile home on the lot, denied the owner any discretion to choose his tenants and violated due process where on the record and under the mobile home statute the owner retained substantial control over his park and his tenants. [188-190]

A total prohibition by rule by the owner of a mobile home park on
the display by tenants of "For Sale" signs in front of their mobile
homes constituted an unreasonable restriction on the tenants' right
to sell homes on their lots and was invalid. [190-191]

In the absence of any evidence that a sign at the entrance of a mobile
home park directing prospective mobile home purchasers to the of-
fice of the park owner, who had issued park rules and regulations
and who operated a mobile home sales dealership, was part of a
scheme of the owner to infringe on the rights of his tenants to sell
their homes independently, the sign did not constitute a per se vio-
lation of either G. L. c. 140, § 32M, inserted by St. 1973, c. 1007,
§ 2, or c. 93A, § 2 (a). [191]

The continued use by the owner of a mobile home park of a rule that
"[m]anagement recognizes a tenant's right to sell his mobile home
on the lot, if current legislation is upheld in the Courts" was held
to be unnecessary by this court in the light of its decisions. [191-192]

BILL IN EQUITY filed in the Superior Court on May 1,
1974.

The case was heard by *Moriarty,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Piroska E. Soos,* Assistant Attorney General *(Paula W.
Gold,* Assistant Attorney General, with her) for the Com-
monwealth.

*Thomas F. Quinn & Donald J. Correa* for the defendant.


HENNESSEY, C.J.    The Attorney General in the name of
the Commonwealth commenced this action for declaratory
and injunctive relief against Evert Gustafsson, a mobile
home park owner in Plymouth, Massachusetts. In its com-
plaint and its amended complaint, the Commonwealth
sought an adjudication that certain of Gustafsson's rules
and practices constituted "unfair and deceptive trade prac-
tices" in violation of G. L. c. 140, §§ 32J-32Q, as appearing
in St. 1973, c. 1007, §§ 1, 2 (hereinafter referred to as the
mobile home statute). Of the many rules and practices
challenged below, the only ones before us on appeal are
Gustafsson's rule prohibiting mobile home park tenants
from displaying "For Sale" signs in front of their mobile
homes, Gustafsson's sign at the entrance to the park di-

recting prospective mobile home purchasers to his office,[1] and his rule which states in part that "[m]anagement recognizes a tenant's right to sell his mobile home on the lot, if current legislation is upheld in the Courts." In response to the plaintiff's claims, Gustafsson denied that his actions were unlawful and challenged the constitutionality of certain sections of the mobile home statute.

After a two day trial in June, 1974, a Superior Court judge entered "Findings, Rulings and Order for Judgment" on September 6, 1974. Subsequently, he revoked his initial order so as to permit reargument in light of this court's decision in *Commonwealth* v. *DeCotis*, 366 Mass. 234, decided September 12, 1974, and issued a second decision revising the prior order on December 19, 1974. Included in the judgment entered below were rulings that G. L. c. 140, § 32J (which restricts a park owner's right to evict tenants), and § 32M (which requires the park owner to rent to a tenant's prospective buyer if the buyer meets the current rules of the park) constitute an unconstitutional taking of property without due process; that so much of § 32P as requires disclosure of the provisions of §§ 32J and 32M is unconstitutional; and that Gustafsson's park rules and practices outlined above do not violate the mobile home statute. In addition, the trial judge reversed his prior rulings declaring unconstitutional § 32L, cls. 1 and 6, (which render unenforceable park rules which are "unreasonable, unfair, or unconscionable" and rules or conditions of occupancy which are "unfair and deceptive") and concluded that, in view of *DeCotis*, these subsections of § 32L were not unconstitutionally vague.

On February 20, 1975, the Commonwealth filed notice of appeal, and the case is now before this court after allowance of Gustafsson's application for direct appellate review.

---

[1] Gustafsson's sign reads as follows: "THIS PARK IS PRIVATE PROPERTY — NOTICE to prospective tenants in this park: Anyone intending to buy a used mobile home in this park, please inquire at the office FIRST."

The facts which gave rise to this controversy are as follows. Gustafsson is the owner and operator of a mobile home park known as Plymouth Mobile Estates. The park, which he has owned since 1962, consists of seventy acres, only thirty of which have been developed. At the time of trial, nearly 136 lots had been completed, and there were plans to develop seventy more lots and a recreation facility on the remaining land. Most of the tenants in Gustafsson's park are elderly, living on fixed incomes. They own their mobile homes, but rent their lots from Gustafsson for a monthly fee of $50.

In addition to running the park, Gustafsson operates a mobile home sales dealership. In this capacity, he purchases new mobile homes at wholesale and resells them to his tenants and others, usually at a profit of about $4,000. He also has purchased and resold several secondhand mobile homes.

Prior to the passage of the mobile home statute, the tenants in Gustafsson's park were tenants at will on a month-to-month basis, and, although there were no leases, written rules and regulations had been promulgated by Gustafsson, including a rule that a mobile home owner could not sell his home on the lot. Gustafsson considered this his most important rule, since it enabled him to "keep the park up to date" and often gave him additional income. As a result of this rule, a tenant could sell his home to a buyer who had another place to put the home, sell it directly to Gustafsson, or sell it to a dealer who would in turn pay Gustafsson a commission of $100-$200 to hold the space until the dealer sold a new home for the lot.

After the passage of the mobile home statute, St. 1973, c. 1007, which became effective in February, 1974, Gustafsson sent to each tenant a copy of a lease and new rules and regulations for the park. The new rules, like the prior ones, included a prohibition against displaying any business or advertising signs, including "For Sale" signs. Pursuant to this rule, eviction notices were sent to three tenants who had posted "For Sale" signs in front of their mobile homes. At the time of trial, several of these tenants

Commonwealth *v.* Gustafsson.

had sold their homes, but no one had been evicted. In addition, Gustafsson posted a sign at the entrance to the park, see note 1 *supra,* directing prospective purchasers to his office, and established a new rule (Rule 25) acknowledging a tenant's right to sell his home on the lot "if current legislation is upheld . . . ."

On appeal, the Commonwealth contends that Gustafsson's rule prohibiting "For Sale" signs, and Rule 25, by interfering with a tenant's right to sell his home on the lot, are "unreasonable, unfair, or unconscionable" in contravention of G. L. c. 140, § 32L, cl. 1, and as such constitute an "unfair and deceptive trade practice" under G. L. c. 93A, § 2 (*a*), the enforcement mechanism provided for in c. 140, § 32L, cl. 7. Further, the Commonwealth asserts that Gustafsson's sign is an "unfair and deceptive trade practice" in violation of the mobile home statute, since this sign inhibits a tenant's right to sell his home on the lot. Before we turn to these claims under the statute, we first must consider the trial judge's rulings as to the constitutionality of certain sections of the mobile home statute.

We believe that it was incorrect for the trial judge to rule on the constitutionality of G. L. c. 140, § 32J,[2] which pertains to evictions, and § 32P, which requires disclosure of the terms and conditions of occupancy. These sections are not material to the instant case, and we need not consider their constitutionality in order to determine the rights of the parties. It is well settled that "[p]arties are not

---

[2] The trial judge ruled that G. L. c. 140, § 32J, as appearing in St. 1973, c. 1007, § 1, deprives a park owner of property without just compensation. This section prohibits a park owner from evicting a tenant except for (1) nonpayment of rent, (2) a substantial violation of any enforceable park rule, or (3) a violation of a law or ordinance protecting the health or safety of the park residents. The trial judge viewed this limitation on a park owner's use of his property as being unduly restrictive, for a landowner could not terminate a tenancy for the purpose of withdrawing the lot from the rental market. We note that § 32J has since been amended by St. 1975, c. 692, which adds a fourth reason for eviction — "a discontinuance in good faith by the licensee, of the use of part or all of the land owned by the licensee as a mobile home park subject to any existing contractual rights or agreements . . . ."

entitled to decisions upon abstract propositions of law unrelated to some live controversy." *Cole* v. *Chief of Police of Fall River,* 312 Mass. 523, 526 (1942). Courts will not decide constitutional questions until the necessity for such a ruling arises in the record before the court. *Id.* at 526. There is no such necessity in the present case, for the record before us does not call into question the validity of §§ 32J and 32P.[3] Accordingly, we conclude that the portion of the judgment below which passes on their constitutionality must be vacated.

On the other hand, we do not agree with the Commonwealth's claim that we are precluded from considering Gustafsson's argument that § 32L, cls. 1 and 6, are unconstitutionally vague. According to the Commonwealth, we are foreclosed from considering the constitutionality of these subsections as a result of Gustafsson's failure to appeal from the trial judge's ruling that § 32L, cls. 1 and 6 are not impermissibly vague. Although a party may not, without appealing, attack a judgment with a view to enlarging his rights thereunder, a party may support a claim or judgment allowed below by urging the validity of a theory or an argument rejected by the lower court as a basis for its decision. *United States* v. *American Ry. Express Co.,* 265 U.S. 425, 435-436 (1924). In the present case, Gustafsson does not attack the judgment below but only seeks to sustain it on the basis of a theory that was rejected by the trial judge, namely, that the standards set forth in § 32L, cls. 1 and 6, are unconstitutionally vague.

Although we conclude that the constitutionality of § 32L, cls. 1 and 6, is properly before us, we do not agree with Gustafsson's contention that these subsections are so indefinite and vague as to offend the due process clause. Gustafsson argues that the language in § 32L, cls. 1 and 6, set forth below,[4] is so subjective that a person lacks suffi-

---

[3] We note that in the defendant's prayers for relief he does not ask that § 32J or § 32P be invalidated.

[4] General Laws c. 140, § 32L, inserted by St. 1973, c. 1007, § 2, provides in part: "1. A mobile home park licensee may promulgate rules

cient notice as to what conduct is forbidden under the law. Section 32L, cl. 7, which provides that failure to comply with § 32L constitutes "an unfair and deceptive trade practice" under c. 93A, § 2 (*a*), is not challenged by the defendant, for he concedes that these words are adequately clear in light of the existing body of interpretative law.

We note initially that the due process clause does not require great exactitude of statutes which regulate business activities. See *Papachristou* v. *Jacksonville,* 405 U.S. 156, 162 (1972). Regulation of trade practices must be in broad terms in order to prevent circumvention of statutory purposes by "new and ingenious ways that were unknown when the [statute was] enacted." *Sears, Roebuck & Co.* v. *FTC,* 258 F. 307, 311 (7th Cir. 1919) (rejecting the claim that the Federal Trade Commission Act is unconstitutionally vague). Therefore, the meaning and application of terms "must be arrived at by ... 'the gradual process of judicial inclusion and exclusion.' " *FTC* v. *Raladam Co.,* 283 U.S. 643, 648 (1931), quoted in *FTC* v. *R.F. Keppel & Bro.,* 291 U.S. 304, 312 (1934).

Although the words "unfair," "unreasonable," "unconscionable," and "deceptive" may appear to lack specificity, if considered in the abstract, we believe that their meaning may be determined from the circumstances of each case. See *Commonwealth* v. *DeCotis,* 366 Mass. 234, 242 (1974). A court may be guided by the text of the statute and a consideration of the abuses sought to be remedied by its enactment. In addition, we may rely on the interpretation given to the same language in other legislation (see, e.g., G. L. c. 106, § 2-302, which governs unconscionable contracts) or on the well settled common law meanings of words such as "unfair" and "unreasonable" which have long been a part of our judicial system. See, e.g., *Kneeland* v. *Emerton,* 280 Mass. 371 (1932); *Commonwealth* v. *Reilly,* 248 Mass. 1 (1924). It would be both unnecessary and un-

governing the rental or occupancy of a mobile home lot but no such rule shall be unreasonable, unfair, or unconscionable.... 6. Any rule or condition of occupancy which is unfair and deceptive or which does not conform to the requirements of this section shall be unenforceable."

desirable, if not impossible, to attempt a comprehensive definition of those rules and practices which are barred under the mobile home statute, cf. *FTC* v. *R.F. Keppel & Bro., supra* at 314; *Commonwealth* v. *DeCotis, supra* at 242, and, therefore, we believe that the standards set forth in § 32L, cls. 1 and 6, are sufficiently definite to satisfy the due process clause.

Having considered the constitutionality of § 32L, cls. 1 and 6, we now turn to § 32M, set forth below,[5] for this latter section is central to the Commonwealth's challenge to Gustafsson's rules and practices. The Commonwealth argues on appeal that two of Gustafsson's park rules and his sign, see note 1 *supra,* interfere with a tenant's right to sell his home on the lot. Both parties agree that this right exists as a result of § 32M. The trial judge, although not questioning the validity of § 32M in so far as it grants a tenant the right to sell his home on the lot, interpreted § 32M as requiring a park owner to rent space against his will to a purchaser of a tenant's mobile home. On the basis of the interpretation that § 32M denies a park operator any discretion to choose his tenants, he ruled that § 32M was unconstitutional in violation of the due process clause.

We believe that the trial judge's conclusion was incorrect in that it was premised on a misinterpretation of the mobile home statute. This statute does not, in the words of the trial judge, "leave the park operator with no discretion whatsoever," nor does § 32M go beyond the restriction that was approved by this court in *DeCotis.* 366 Mass. 234 (1974). In *DeCotis,* the court found that the "practice of charging a fee for no service whatsoever was an unfair act or practice within the intent of § 2 (*a*) of G. L. c. 93A . . . ."

---

[5] General Laws c. 140, § 32M, inserted by St. 1973, c. 1007, § 2, provides: "Upon the sale or proposed sale of a mobile home located on a lot in a mobile home park and which is not owned by the mobile home park licensee, the prospective purchaser and members of his household may not be refused entrance if they meet the current rules of the park.

"Failure to comply with the provisions of this section shall constitute an unfair and deceptive trade practice under the provisions of section two (*a*) of chapter ninety-three A."

*Id.* at 241. Pursuant to this conclusion, a decree, as modified by this court, was entered enjoining the defendant park owner from "prohibiting, limiting or restricting the resale of mobile homes in Pine Grove Park by persons living in the park or placing any restraint upon a free and open sale of mobile homes located in the park for occupancy there by the purchaser upon the same terms and conditions of tenancy as those generally available from time to time to tenants of Pine Grove, subject only to the reasonable approval of said buyer by the Respondents." *Id.* at 236 n.2, 246 n.9. This decree essentially has the same effect as § 32M, for, under both, the tenant has the unrestricted right to sell his home on the lot and the park owner may not unreasonably reject a tenant's prospective buyer. Under *DeCotis* approval of the new tenant may not be withheld unreasonably, and under the mobile home statute a park owner can promulgate reasonable rules and regulations (see § 32L), and thereby exercise control as to the qualifications for prospective tenants. In substance, both *DeCotis* and § 32M provide for the exercise of reasonable discretion and eliminate the possibility of arbitrary action by the park owner. Therefore, § 32M cannot be considered as inconsistent with our decision in *DeCotis*.

By examining the record before us, as well as the mobile home statute, we find ample evidence to support our conclusion that Gustafsson has the opportunity to exert substantial control over his park and his tenants. Under this statute, a park owner can protect himself from undesirable tenants by enacting reasonable park rules (§ 32L), by evicting tenants for a substantial violation of those rules (§ 32J) and by amending or adding rules to meet the changing needs of the park (§ 32L, cl. 5). Private rule-making by the park owner is encouraged under this statutory scheme, subject to the limitation in § 32L, cl. 1, that the rules may not be "unreasonable, unfair, or unconscionable." Pursuant to his rule-making authority, Gustafsson issued a new lease and rules and regulations which include provisions that allow him to screen all prospective buyers for credit, character and compliance with park rules. Furthermore, Gus-

tafsson's lease requires that tenants give him the first option to purchase their mobile homes, thus enabling him to buy a tenant's home and to avoid the requirements of § 32M. It is clear that Gustafsson can retain substantial discretion in selecting the tenants for his park and has in fact done so.

In light of our reading of the statute and review of the record, we conclude that it was incorrect for the trial judge to invalidate § 32M. It is well settled that a statute must be read so as to avoid constitutional doubts, see *Worcester County Nat'l Bank* v. *Commissioner of Banks,* 340 Mass. 695, 701 (1960), and we believe that it is possible to do so in the present case. Accordingly, we conclude that the judge was in error in ruling that § 32M is unconstitutional.

We now turn to the Commonwealth's claim that Gustafsson's rule prohibiting tenants from displaying "For Sale" signs is "unreasonable, unfair, or unconscionable" under § 32L, cl. 1, and, therefore, a violation of G. L. c. 93A, § 2 (a).[6] The judge concluded that this rule was not unreasonable, since signs tend to detract from the appearance of a mobile home park, and they can create the impression that the park is an undesirable place to live.

Although "For Sale" signs can be unattractive, this consideration must be weighed against the importance of the tenant's right under the mobile home statute to sell his home on the lot. Despite a growing demand for mobile homes, there is a shortage of available land. See Comment, The Community and the Park Owner Versus the Mobile Home Park Resident: Reforming the Landlord-Tenant Relationship, 52 B.U.L. Rev. 810, 812 n.22 (1972). In view of the scarcity of land, a mobile home owner may find it difficult, as well as expensive, to move his home to a new lot. *Id.* at 811 n.12. In addition, the market value of the mobile home will be, to a considerable extent, dependent on the

---

[6] General Laws c. 140, § 32L, cls. 6 and 7, inserted by St. 1973, c. 1007, § 2, provide that an "unreasonable, unfair, or unconscionable" rule is unenforceable and that the adoption of such a rule shall constitute "an unfair and deceptive trade practice" under G. L. c. 93A, § 2 (a).

availability of a lot space, and, thus, if a tenant is unable to sell his home on the lot, his investment may be rendered almost worthless. See Note, Mobile Home Park Practices: The Legal Relationship Between Mobile Home Park Owners and Tenants Who Own Mobile Homes, 3 Fla. State U.L. Rev. 103, 119 n.93 (1975). For these reasons, a tenant's right to sell his home on his lot is of substantial importance, and the statute may properly forbid a park owner from restricting this right unnecessarily.

Admittedly, Gustafsson could ensure the attractiveness of his park by enacting reasonable rules regulating the type and size of signs and the areas in which they may be displayed. However, we believe that a total prohibition of "For Sale" signs constitutes an unreasonable restriction on a tenant's right to sell his home on the lot, for it unnecessarily restricts a seller's options in dealing with the public, and is contrary to the intent of *DeCotis*, which enjoined the park owner from "limiting... the resale of mobile homes" by park tenants. 366 Mass. at 236 n.2.

The Commonwealth also attacks Gustafsson's sign, see note 1 *supra,* on the ground that it interferes with a tenant's right to sell his home on the lot. Arguably, this sign is misleading in that it suggests that Gustafsson is the agent for all mobile home sales in the park. However, the wording of the sign is also consistent with his stated explanation that the sign exists so as to inform prospective purchasers of the park rules and regulations. In the absence of any evidence indicating that the sign is part of a scheme to infringe on the rights of his tenants to sell their homes independently, we cannot say that it constitutes a per se violation of either § 32M of the mobile home statute or c. 93A, § 2 (*a*). Accordingly, we affirm the trial judge's ruling sustaining Gustafsson's use of the sign at the entrance to his park.

We now address the third and final practice which the Commonwealth challenges on appeal. Gustafsson's Rule 25, which provides, in part, that "[m]anagement recognizes a tenant's right to sell his mobile home on the lot, if current legislation is upheld in the Courts," is attacked on the

grounds that it is contrary to the principle that statutes are presumed to be constitutional and that its meaning cannot be understood by most readers. While we agree that the meaning of the rule is unclear, if not incomprehensible, we need not reach the question whether it is "unreasonable, unfair, or unconscionable" under § 32L, cl. 1. Rather, it is sufficient to note that, in light of what has been said in this decision and in *DeCotis*, the continued use of such a rule is unnecessary and may indicate an attempt to frustrate the intent of § 32M of the mobile home statute.

In summary, we conclude that the judge was correct in ruling that § 32L, cls. 1 and 6, are not unconstitutionally vague; that his rulings as to §§ 32J and 32P must be vacated; and that he was in error in ruling that § 32M is unconstitutional and in upholding the validity of Gustafsson's rule prohibiting tenants from displaying "For Sale" signs. The case is remanded to the Superior Court with instructions that a judgment consistent with this opinion should be entered.

*So ordered.*