MARVIN T. JOHNSON & others *vs.*
FERDINAND F. MARTIGNETTI & others.

Middlesex. December 8, 1977. — April 11, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Alcoholic Liquors,* License, Nuisance. *Due Process of Law,* Vagueness of statute. *Constitutional Law,* Equal protection of laws. *Statute,* Construction. *Nuisance. Practice, Civil,* Judgment. *Words,* "Combination of persons."

The provisions of G. L. c. 138, § 15, limiting the number of package stores which may be individually or jointly owned, are not unconstitutionally vague. [787-790]

The provisions of G. L. c. 138, § 15, limiting the number of package stores which may be individually or jointly owned, do not violate the equal protection rights of package store owners. [790-793]

In an action pursuant to G. L. c. 138, § 60, and G. L. c. 139, § 16A, seeking to abate the use of a building as a liquor nuisance, an injunction prohibiting the owners of the building from using their premises as a package store for a period of one year was not inconsistent with the terms of c. 139, § 16A. [793-796]

CIVIL ACTION commenced in the Superior Court on February 20, 1975.

The case was heard by *Greaney,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Howard M. Miller* for Ferdinand F. Martignetti & another.

*Benjamin Goldman* for Y & M Trust.

*James N. Esdaile, Jr.*, for Marvin T. Johnson & others.

*Thomas Miller*, Assistant Attorney General, for the Attorney General.

HENNESSEY, C.J.  On February 20, 1975, fourteen taxpayers brought an action pursuant to G. L. c. 138, § 60, and G. L. c. 139, § 16A,[1] seeking to abate the use of a building on the ground that it was being used unlawfully as a liquor nuisance. Their claim of unlawful use was based on G. L. c. 138, § 15, commonly known as the "multiple ownership law," which provides, in substance, that no person or combination of persons, directly or indirectly, shall be granted more than three liquor licenses for the sale of alcoholic beverages to be consumed away from the premises.

The named defendants include various individuals controlling six corporations, which in turn hold eight package store licenses, and which do business under the name of "Martignetti Liquors."[2] Additionally, the trustees of Y & M Trust, owners of the Woburn real estate on which one of the defendant corporations does business, were named as defendants. All defendants denied that they had violated G. L. c. 138, § 15.  Further, by way of a motion to dis-

---

[1] General Laws c. 138, § 60, inserted by St. 1933, c. 376, § 2, provides: "All alcoholic beverages which are kept for sale contrary to law and the implements and vessels actually used in selling and keeping the same are declared to be common nuisances."

General Laws c. 139, § 16A, as appearing in St. 1973, c. 1114, § 12, provides, in pertinent part: "Upon a civil action brought . . . by not less than ten legal voters of a town or city, in their own names, stating that a building . . . situated therein is being used for the illegal keeping, sale or manufacture of alcoholic beverages, . . . the superior court may abate the same as a common nuisance . . . ."

[2] These defendants are: Ferdinand F. Martignetti, Ida Martignetti, Joseph Martignetti, Anita Martignetti, Theresa Martignetti, Jacqueline Martignetti, Anthony Martignetti, Barron Beverage Co., Inc., Martignetti Grocery Co., Inc., Alex's Package Store, Inc., d/b/a Martignetti Liquor Mart, Orlandella Grocery Co., d/b/a Martignetti Food and Liquor Store, d/b/a Martignetti Liquor Company and d/b/a Martignetti Liquors, Route I Liquors, Inc., Martignetti's Liquors of Cambridge, Inc., d/b/a Martignetti Grocery and Liquor Company, and Plaza Package Store, Incorporated. Carmen Martignetti, who died during the pendency of this action, had also been a defendant.

miss, the defendants challenged the constitutionality of the multiple ownership law on due process and equal protection grounds. The Attorney General was permitted to intervene and be heard on the asserted constitutional claims.

After considering testimony, numerous exhibits, and a statement of agreed facts, the judge denied the defendants' motion to dismiss and concluded that the various defendants were a "combination of persons" holding more than three liquor licenses in violation of G. L. c. 138, § 15. As a result, the judge (1) permanently enjoined the individual and corporate defendants from maintaining an illegal liquor nuisance at their Woburn location (hereinafter Plaza Package Store), (2) ordered the individual and corporate defendants to remove all property from the Plaza Package Store within thirty days after final judgment, and (3) enjoined the owner of the premises from using, leasing, or renting the location as a package store for a period of one year from the date of the judgment.

In light of our decision in *Powers* v. *Sixty Broadway, Inc.*, 371 Mass. 296 (1976), the defendants now concede that, "in combination," they do own or control more than three package store licenses in violation of G. L. c. 138, § 15. Their arguments on appeal are thus directed toward the constitutionality of § 15 and toward the propriety of the injunction under G. L. c. 139, § 16A. For the reasons discussed below, we conclude that § 15 is neither unconstitutionally vague nor violative of the defendants' rights to equal protection. We further conclude that the terms of the injunction are not inconsistent with the provisions of G. L. c. 139, § 16A. Accordingly, we affirm.

The facts are as follows. Martignetti Liquor operations were begun originally by Carmen Martignetti and his wife. Their sons, Anthony, Ferdinand, and Joseph, began their work in the family business when they were children. In 1963, the elder Martignettis transferred to Anthony, Ferdinand, Joseph, and their respective wives, all their stock holdings in Martignetti Grocery Co., Inc., and Orlandella Grocery Co., Inc. As a result of this transfer, the family of

each Martignetti son now controls 33 1/3 % of the eligible voting stock in the Martignetti and Orlandella corporations.

Subsequent to the 1963 transfer, the Martignetti brothers acquired other package stores, including the Plaza Package Store located in Woburn.[3] At present, the Martignetti brothers and their wives control, in the aggregate, 100 % of the voting stock of eight package stores. None of the individuals, however, owns stock in corporations holding more than three package store licenses.

Several indicia of common operations led the judge to conclude that "over the years by design and collusion the three primary individuals, Joseph, Ferdinand and Anthony Martignetti . . . have constructed . . . a tightly interconnected liquor chain . . . ." The judge found that the defendant corporations and individuals participated in a common scheme of advertising, bookkeeping, pension plans, liability and insurance policies, discounting techniques, pricing, hiring, and financing corporate debt. The judge further found: a common design to promote the name "Martignetti Liquors" with reference to all the stores; a history of interconnecting loan transactions which suggested common use of corporate and trust assets; and a system whereby each of the individual defendants had authority to act on behalf of the other corporations in which he was not an officer or director. In light of these findings, the judge concluded that "[t]he business transactions which have occurred and are continuing to occur between the various entities paid little if any attention to the separateness of the corporations, and are bound together in a common business."

1. The defendants argue that, in proscribing any "person, firm, corporation, association or other *combination of persons, directly or indirectly*" from holding, in the aggregate, more than three package store licenses, the provisions of

---

[3] The sole stockholder of record of Plaza Package Store is Ferdinand Martignetti. In 1974, he was the record purchaser of all the outstanding stock of the corporation from existing stockholders. This transaction was approved by the Woburn License Commission and by the Alcoholic Beverages Control Commission.

G. L. c. 138, § 15, are impermissibly vague (emphasis added). They assert that § 15 violates due process because the average person, exercising economic and business knowledge, cannot determine from the above-quoted language precisely what activity is permitted or proscribed. We disagree.

A statute is not to be invalidated under the void-for-vagueness doctrine where the challenged provisions are merely general in nature, requiring a person to conform his or her conduct "to an imprecise but comprehensible normative standard." *Coates* v. *Cincinnati,* 402 U.S. 611, 614 (1971). Rather, the doctrine is applied to strike down statutes in which "no standard of conduct is specified at all." *Id.* at 614. See generally *Jaquith* v. *Commonwealth,* 331 Mass. 439, 441-442 (1954); *Parker* v. *Levy,* 417 U.S. 733, 755 (1974); *United States* v. *Petrillo,* 332 U.S. 1, 7-8 (1947); *United States* v. *L. Cohen Grocery Co.,* 255 U.S. 81, 89 (1921).

The statute in question suffers from no such infirmity. The phrase "combination of persons" has a well established common law meaning, both generally and in the context of alcoholic beverage regulation. In general terms, the existence of a combination may be found where two or more persons engage in a mutuality of action designed to effect a common result. See generally *Antoine* v. *Commonwealth Trust Co.,* 266 Mass. 202, 206 (1929); *Commonwealth* v. *Dyer,* 243 Mass. 472, 488-489 (1922); *Cornellier* v. *Haverhill Shoe Mfrs. Ass'n,* 221 Mass. 554, 559, 562 (1915); *Commonwealth* v. *Hunt,* 4 Met. 111, 121-125 (1842); Black's Law Dictionary 333 (rev. 4th ed. 1968); 1 von Kalinowski, Antitrust Laws and Trade Regulation § 6.01[1] at 6-2 to 6-4 (1975). Even more specifically, this court has stated that, in the area of alcoholic beverage regulation, the existence of a "combination of persons" is a question of fact which may be inferred from such circumstantial evidence as: common group insurance policies, bookkeeping offices, employees, and bonus formulas; substantial intercompany dealings; common use of various assets; and a decision-

making pattern whereby the owner of one business entity has authority to act on behalf of others. See *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 349 (1964). See also *Powers* v. *Sixty Broadway, Inc.*, 371 Mass. 296, 300 (1976). There is thus ample guidance as to proscribed activity in the Legislature's use of the phrase "combination of persons."

Similarly, the meaning of the statute's proscription against direct or indirect holdings of more than three licenses is readily ascertainable. Because G. L. c. 138 may properly be read as a whole, e.g., *Cleary* v. *Cardullo's, Inc., supra* at 347, we may refer to related statutory provisions to determine the meaning of the phrase in § 15. Cf. *Lantner* v. *Carson, ante* 606, 610 (1978). Section 15A of c. 138 indicates that, with regard to the granting of liquor licenses, the broad legislative concern with direct or indirect license holdings is, more specifically, a concern with business entities which have a "direct or indirect *beneficial interest*" in a licensed establishment. The terms of § 15A suggest a definite guideline as to the meaning of this phrase. The section provides that a holding of less than 10 % of the outstanding voting stock of a corporation owning a liquor license does *not* constitute a direct or indirect beneficial interest within the meaning of the statute. The logical, reasonable inference is that a holding of more than 10 % of the voting stock of an establishment owning a liquor license would tend to support an inference that there was a "direct or indirect" interest under c. 138's statutory scheme.

Greater exactitude in statutory terms is not required by the due process clause. We have recognized that "[r]egulation of trade practices *must* be in broad terms" (emphasis added). *Commonwealth* v. *Gustafsson,* 370 Mass. 181, 187 (1976). Accord, *Papachristou* v. *Jacksonville,* 405 U.S. 156, 162 (1972). Thus, in the area of economic regulation, due process requirements are met where, as here, the statute in question sets forth guidelines the meaning and application of which are supplied by a "gradual process of judicial inclusion and exclusion." *Commonwealth* v. *Gustafsson, supra.*

We need not concern ourselves with the hypothetical situations raised by the defendants to demonstrate the ambiguities existing in the challenged statute. "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to [strike down a statute on due process grounds]." *Roth* v. *United States,* 354 U.S. 476, 491-492 (1957), quoting from *United States* v. *Petrillo,* 332 U.S. 1, 7 (1947); accord, *Hamling* v. *United States,* 418 U.S. 87 (1974). Further, because the judge found that the defendants' actions fell squarely within the prohibitions of § 15, they may not now raise the possible uncertainties in the statute's application in order to strengthen their vagueness claim. See *Young* v. *American Mini Theatres, Inc.,* 427 U.S. 50, 58-59, 61 (1976); *Parker* v. *Levy,* 417 U.S. 733, 758 (1974).

Neither is the defendants' due process claim advanced by pointing to past administrative approval of the defendants' § 15 violations. Courts are not bound by erroneous administrative constructions of a statute. See *Cleary* v. *Cardullo's, Inc.,* 347 Mass. 337, 344 (1964). As the defendants themselves concede, administrative reliance cannot validate that which may be illegal. *New City Hotel Co.* v. *Alcoholic Beverages Control Comm'n,* 347 Mass. 539, 542 (1964). *Ferrante* v. *Board of Appeals of Northampton,* 345 Mass. 158, 162-163 (1962).

2. The defendants argue that, by limiting the number of package stores which may be individually or jointly owned, § 15 is discriminatory, is without rational basis, and is thereby violative of their rights to equal protection. We do not agree.

We note at the outset that § 15 is by nature an economic regulation and is challenged on the ground that it operates impermissibly to restrict the defendants' pursuit of their business interests. In this context, our review of the statute is governed by several well settled principles.

First, while not denigrating the importance of the economic interests at stake, we have held that, in the area of

economic regulation, "[e]very possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt." *Supreme Malt Prods. Co.* v. *Alcoholic Beverages Control Comm'n,* 334 Mass. 59, 61 (1956). Accord, *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins., ante* 181, 190 (1978); *Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 541 (1974); *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138 (1949). As to the actual merits of the enactment, judicial review is limited to determining whether the classification involved rationally "furthers a legitimate State interest." See *Opinion of the Justices,* 368 Mass. 857, 865 (1975). "We, as a judicial body, may not substitute our independent judgment for that of the Legislature in areas . . . which may justify, even require, rough accommodations that to some extent result in dissimilarity of treatment." *Commonwealth* v. *Henry's Drywall Co., supra* at 545. Thus, the statutory classifications at issue need not be such as would "commend themselves to an outsider as a perfect solution." *Opinion of the Justices, supra.* As long as the provisions are not arbitrary or irrational, the Legislature has "broad discretion in deciding how to attack a problem." *Id. Commonwealth* v. *Henry's Drywall Co., supra* at 545. *Jewel Cos.* v. *Burlington,* 365 Mass. 274, 279 (1974). *McGowan* v. *Maryland,* 366 U.S. 420, 425 (1961). *Williamson* v. *Lee Optical of Okla., Inc.,* 348 U.S. 483, 489 (1955).

In addition, under the Twenty-first Amendment to the United States Constitution, States are given particularly wide latitude in regulating the liquor industry. *Opinion of the Justices, supra. Joseph E. Seagram & Sons* v. *Hostetter,* 384 U.S. 35, 42 (1966). See *Connolly* v. *Alcoholic Beverages Control Comm'n,* 334 Mass. 613, 619 (1956); *Supreme Malt Prods. Co.* v. *Alcoholic Beverages Control Comm'n,* 334 Mass. 59, 61 (1956); *California* v. *LaRue,* 409 U.S. 109, 114, 118 (1972); *Grand Union Co.* v. *Sills,* 43 N.J. 390, 403-404 (1964). But see *Commonwealth* v. *Sees, ante* 532 (1978) (under the Declaration of Rights of the Massachusetts Constitution, liquor regulation may not restrict consti-

tutionally protected speech); *Opinion of the Justices,* 373 Mass. 888, 894 (1977).

In light of these considerations, the defendants' equal protection challenge to § 15 is not persuasive. First, many sound reasons have been advanced to support restrictions on the number of liquor licenses allowed any one business interest. Concentration of retailing in the hands of an economically powerful few has been thought to intensify the dangers of liquor sales stimulations, thereby threatening trade stability and promotion of temperance. Regulation of the number of licenses issued, therefore, aims at controlling the tendency toward concentration of power in the liquor industry; preventing monopolies; avoiding practices such as indiscriminate price cutting and excessive advertising; and preserving the right of small, independent liquor dealers to do business. See generally *Safeway Stores, Inc.* v. *Nebraska Liquor Control Comm'n,* 179 Neb. 817, 821-823 (1966); *Grand Union Co.* v. *Sills,* 43 N.J. 390, 404 (1964). Cf. *Opinion of the Justices,* 349 Mass. 794, 797 (1965). The restrictions on package store license holdings are rationally related to these concerns. We cannot say that the General Court did not have any or all of them in mind when it enacted G. L. c. 138, § 15.

Second, there is no invidious discrimination in the fact that the specific multiple holding proscriptions of § 15 apply only to package store owners, and not to other types of liquor distributors such as wholesalers or restaurateurs. It has been recognized that different segments of the liquor industry are motivated by different economic dynamics, and, within the industry, sales approaches vary greatly. The Legislature may properly take this into account. "The Constitution does not require things which are different in fact . . . to be treated in law as though they were the same." *Tigner* v. *Texas,* 310 U.S. 141, 147 (1940). Accord, *Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 545 (1974); *Maher* v. *Brookline,* 339 Mass. 209, 213 (1959); *Williamson* v. *Lee Optical of Okla., Inc.,* 348 U.S. 483, 489 (1955). Further, it is well recognized that "[w]hen legislative au-

thority is exerted within a proper area, it need not embrace every conceivable problem within that field. The Legislature may proceed one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Jewel Cos.* v. *Burlington*, 365 Mass. 274, 279 (1974), quoting from *Mobil Oil Corp.* v. *Attorney Gen.*, 361 Mass. 401, 417 (1972). See *Williamson* v. *Lee Optical of Okla., Inc., supra* at 489.

Finally, viewing the provisions of G. L. c. 138 as a whole, cf. *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 347 (1964), we observe that, contrary to the defendants' assertions, package store owners are not particularly singled out for special treatment under the alcoholic beverage regulations. Rather, G. L. c. 138 sets forth a comprehensive statutory scheme regulating all major aspects of the liquor industry, including sale of liquor by the drink (§ 12), sale of beer and wine (§ 17), wholesale liquor distribution (§ 18), and the manufacture of alcoholic beverages (§ 19). The statute imposes limitations in both number and kind on the holding of all these types of liquor licenses. See, e.g., G. L. c. 138, §§ 12, 17. Thus, although package store owners are subject to distinct restrictions within c. 138's statutory scheme, they do not stand alone as a highly regulated segment of the liquor industry.

3. The defendants challenge the scope of the judge's order in two respects. First, they contend that the order enjoining the trustees of Y & M Trust from using their premises as a package store for a period of one year explicitly contravenes G. L. c. 139, § 16A. They point out that the language of the order is phrased similarly to that of G. L. c. 139, § 9,[4] which section is specifically inapplicable to actions brought

---

[4] General Laws c. 139, § 9, provides in pertinent part: "If it shall appear that the bill of complaint was filed five or more days after notice to the record owner of the premises, and that he did not proceed forthwith to enforce his rights under section nineteen, such order of abatement shall further direct the effectual closing of the building . . . and the prohibition of its use for any purpose for one year . . .."

under § 16A.[5] Second, the defendants argue that the terms of the injunction go beyond that which is necessary to abate the liquor nuisance.

We conclude that the scope of the injunction is not inconsistent with the terms of § 16A. Notwithstanding many similarities in language, the challenged order deviates from the terms of § 9 in one significant respect. Where § 9 refers to the closing of the building and the prohibition of its use *for any purpose* for a period of one year, the judge's order merely prohibits the use of the premises *as a package store* for a period of one year. Under the terms of the injunction the owner remains free to use the premises for other purposes. The limitations of § 16A, directed specifically toward § 9 injunctions prohibiting the use of a building for *any* purpose, thus do not apply. The bounds of § 16A are not exceeded here.

We agree with the defendants' position that the terms of the injunction are broad. We do not conclude, however, that the judge erred in so framing his order. It is a well settled principle that, in fashioning appropriate relief, the issuance and scope of equitable relief rests within the sound discretion of the judge, *Martin* v. *Murphy*, 216 Mass. 466, 468 (1914), who may phrase the court's order so as to afford a full, complete remedy. *Security Bank* v. *Callahan*, 220 Mass. 84, 89 (1915), and cases cited. The judge possesses a particularly broad latitude of discretion where the public interest is involved, *Caputo* v. *Board of Appeals of Somerville*, 330 Mass. 107, 112 (1953), and may mould each decree to the necessities of each case.[6] See *Food Fair Stores*,

---

[5] General Laws c. 139, § 16A, as appearing in St. 1973, c. 1114, § 12, provides in pertinent part: "[T]he provisions of section nine . . . shall not apply, and in lieu thereof the court may include in its judgment an order for such closing and prohibition, if it appears that prior thereto and within the preceding three years there shall have been three convictions for the illegal sale, or keeping, or manufacture of alcoholic beverages . . . in or upon the premises . . . ."

[6] Cf. *Commonwealth* v. *United Food Corp.*, ante 765, 779 (1978), wherein we held that the legislative mandate ordering that, on finding the

*Inc.* v. *Food Fair, Inc.*, 177 F.2d 177, 185 (1st Cir. 1949). In light of the facts before the judge both at trial and in a post-trial motion to suspend the injunction, we cannot say that he abused this discretion.

The judge was presented with ample facts to support his conclusion that "[t]he corporations which hold the various licenses at the various locations are merely shells to attempt to interpose between the [Martignettis] and the limitations of Chapter 138, Section 15 an appearance of legitimacy." He properly concluded that the defendants' activities in this respect constituted a knowing and long-standing violation of the liquor licensing statute.

With respect to the owners of the premises, the trustees of Y & M Trust, the judge pointed out in his order that these defendants did not proceed to enforce their rights against the tenants by voiding their lease under G. L. c. 139, § 19.[7] Although § 19 does not mandate that the owner pursue these rights, it was not improper for the judge to conclude that the landlord's knowledge of the nuisance, and its indifference to that fact, made it a participant in the offense. See, e.g., G. L. c. 139, § 20; *Reale* v. *Superior Court*, 265 Mass. 135, 140 (1928); *Chase* v. *Proprietors of Revere House*, 232 Mass. 88, 95-97 (1919).

Additionally, evidence submitted to the judge on a motion to suspend the order revealed that, during the litigation, the Y & M Trust and the Martignettis entered into another agreement by which certain new premises would be

---

existence of a nuisance, the premises in question must be closed for a year and personal property must be seized and sold, was an unconstitutional denial of the right to trial by jury, since the mandatory results were punitive in nature and were not applied, in the judge's discretion, as measures necessary to abate the nuisance.

[7] General Laws c. 139, § 19, as amended through St. 1934, c. 328, § 14, provides in pertinent part: "If a tenant . . ., under a lawful title, uses . . . premises . . . for the purposes of . . . the illegal keeping or sale of alcoholic beverages, . . . such use shall at the election of the lessor or owner annul and make void the lease . . . and, without any act of the lessor or owner, shall cause the right of possession to revert and vest in him . . . .."

used as a retail liquor establishment nothwithstanding the outcome of the instant case. Such evidence only reinforces the judge's conclusion that, with respect to the owners and the lessors of the Plaza Package Store premises, the abatement orders had to be broad in order to ensure that his injunction against the maintenance of a liquor nuisance would not be circumvented.

*Judgment affirmed.*