COMMONWEALTH *vs.* ELLIE BACON. April 6, 1981. The defendant has appealed from her conviction on an indictment charging her with having committed both the offences set out in G. L. c. 112, § 116, inserted by St. 1970, c. 865, § 2. 1. When § 116 is read in conjunction (see *Commonwealth* v. *Sefranka,* 382 Mass. 108, 111 [1980]) with the definitions of "nursing home" and "nursing home administrator" found in § 108 of G. L. c. 112 and in conjunction with the provisions of §§ 109(*a*) and 115(*a*) of the same chapter, it is readily apparent that there is nothing vague in the language which defines the first offense set out in § 116. See *Johnson* v. *Martignetti,* 374 Mass. 784, 788 (1978). (It is not contended that there is anything vague in the language which defines the second offence set out in that section.) 2. There was no error in the denial of the motion which the defendant filed under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), at the close of the Commonwealth's case. See *Commonwealth* v. *Kelley,* 370 Mass. 147, 149-150 (1976). By that time it was open to the jury to find, either from admissions made by counsel for the defendant or from the evidence subsequently introduced by the Commonwealth: that the defendant was a person of above average education; that she did not hold a certificate of licensure (G. L. c. 112, § 111) issued by the Board of Nursing Home Administrators (G. L. c. 13, § 73) (board); that she owned (through a corporation) an operating nursing home; that during most of the period covered by the indictment there was no licensed nursing home administrator employed at or otherwise associated with the home; that during the portion of that period prior to the time when she first employed a licensed administrator (on a part-time consulting basis) the defendant signed and submitted to the Department of Public Health, to the Department of Public Welfare or to the Rate Setting Commission (G. L. c. 6A, § 32) eight different documents in which she styled or otherwise identified herself as the "Administrator" (or "Admr.") of her nursing home; that on three of those documents she attributed to herself the license numbers assigned by the board to duly licensed administrators who were not at the times in question associated with the defendant's home in any capacity whatsoever; and that one of the documents in the latter group was an application for the license to operate a nursing home

which is required by G. L. c. 111, § 71. We are of opinion that on the admissions and the evidence a rational jury (*Commonwealth* v. *Latimore*, 378 Mass. 671, 678 [1979]) could properly conclude beyond a reasonable doubt that the defendant was guilty of both the offences charged. In formulating that opinion we have given the defendant the benefit of the doubt (as did the trial judge) on the question whether intent is an essential element of the second offence set out in § 116. There is no merit to the contention that intent is an element of the first offence set out in that section. See *Commonwealth* v. *Mixer*, 207 Mass. 141, 142-143 (1910), and cases cited; *Commonwealth* v. *Jackson*, 369 Mass. 904, 916 (1976), and cases cited; Nolan, Criminal Law § 103 (1976). 3. No new question was raised by the further motion filed under Mass.R.Crim.P. 25(b), 378 Mass. 896 (1979). 4. (a) The defendant's second request for an instruction to the jury ran contrary to the provisions of the aforementioned §§ 108 and 109(*a*) and was potentially misleading in other respects. (b) The instruction given on the subject of the defendant's twelfth request was correct. The argument to the contrary overlooks the statutory duties and responsibilities of the persons to whom the quoted representations were addressed, who had the right to take those representations as ones to the effect that the defendant was duly licensed. (c) The instructions given correctly defined the essential elements of both offences.

*Judgment affirmed.*

*Richard H. Gens* for the defendant.

*Harriet O. Fordham*, Assistant Attorney General, for the Commonwealth.