OPINION OF THE JUSTICES TO THE HOUSE
OF REPRESENTATIVES.

*Constitutional Law,* Home Rule Amendment. *Municipal Corporations,*
"Home rule." *Hopkinton. Statute,* Construction. *Words,* "Vote
... passed."

St. 1954, c. 660, § 1, providing, with certain exceptions, that "[a]ny
vote ... passed" at any town meeting in Hopkinton shall be subject
to a "referendum" at a special town meeting, but not containing any
reference to a referendum on a negative vote at a town meeting,
indicates a legislative choice to limit the referendum to affirmative
town meeting action, and at a special town meeting for a referendum
vote on a question answered in the negative at a town meeting, an
affirmative vote was not valid under the statute. [881-884]

An affirmative referendum vote at a special town meeting in Hopkinton
to the question whether a petition should be filed with the General
Court for enactment of a special law relating to that town was not
a petition properly "filed or approved by the voters" of the town
under § 8 of art. 89 of the Amendments to the Massachusetts Con-
stitution where the vote was not taken pursuant to any statutory
authorization and was not intended to be a petition of the voters.
[884-885]

On July 27, 1976, the Justices submitted the following
answer to a question propounded to them by the House
of Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully
submit this answer to the question set forth in an order
adopted by the House on May 13, 1976, and transmitted to
us on May 19, 1976. The order recites that there is pending
before the General Court a bill, House No. 4463, entitled,
"An Act providing for recall elections in the town of Hop-
kinton." A copy of the bill was transmitted to us with the
order. The order also recites that a petition seeking enact-
ment of the bill was filed "by the town" under art. 89 of
the Amendments to the Constitution of the Common-
wealth, the Home Rule Amendment. Section 8 of the Home

Rule Amendment permits the filing in the General Court of a petition for a special act relating to a particular town "by the voters of a ... town ... or the town meeting of a town ...."

The order also states that a special town meeting, held in Hopkinton on November 24, 1975, voted against a motion to have the town's board of selectmen petition the General Court requesting enactment of the special act which provides a procedure for the recall of any elected official. The order further recites that, on December 15, 1975, by referendum ballot, the same question was submitted to the voters of the town, purportedly pursuant to St. 1954, c. 660, "An Act providing that certain town meeting votes shall be subject to a referendum in the town of Hopkinton."[1] A majority of those voting favored having the selectmen petition the General Court to enact the proposed special act, the text of which is identical to House No. 4463. Thereafter the petition was filed in the General Court.

The order further recites that opponents of the proposed legislation have questioned the validity of the vote taken by special ballot on the ground that St. 1954, c. 660, does not allow submission to the voters of a question defeated at a town meeting. The order indicates also that a civil action has been filed in the Superior Court, Middlesex County, asking that the vote in favor of the filing of the petition be declared invalid.[2]

---

[1] The crucial language concerning the referendum vote in Hopkinton appears in St. 1954, c. 660, § 1, which amended St. 1943, c. 454, § 2, by inserting a new § 2. For the purposes of our discussion we shall refer to St. 1943, c. 454, § 2, as amended by St. 1954, c. 660, § 1, as St. 1954, c. 660. The only other section of St. 1954, c. 660, provided for submission of its acceptance to the voters at a town meeting. St. 1954, c. 660, § 2.

[2] We have examined the papers and docket entries in that action. *Dennis A. Keefe et al* v. *John H. Duffy et al,* Middlesex Superior Court, Civil No. 75-6607. The complaint was filed on December 12, 1975. The plaintiffs are voters of the town of Hopkinton, and the defendants are the members of the town's board of selectmen. The complaint seeks a declaration that the vote taken at the referendum election was invalid under St. 1954, c. 660, because that statute allows a referendum only on measures affirmed by vote at a town meeting and not measures de-

The order declares that grave doubt exists as to the constitutionality of House No. 4463, if enacted, and requires the opinions of the Justices on the following question:

"Is the petition accompanying House, No. 4463, a petition properly filed by the voters of the town of Hopkinton within the meaning of Section 8 of Article LXXXIX of the Amendments to the Constitution of the Commonwealth, notwithstanding the method by which it was obtained?"

The basic question is whether the House now has before it a petition for a special act affecting a single municipality which was filed properly under the Home Rule Amendment. If the vote on the referendum question was a valid vote under the special act relating to Hopkinton, that vote amounts to a petition for a special act and would be filed properly under § 8 of the Home Rule Amendment.[3] Therefore, we shall consider first whether the petition is the lawful product of the special town meeting, in light of the provisions of St. 1954, c. 660, providing for a referendum vote in certain circumstances.

We consider only whether St. 1954, c. 660, permits a referendum vote after a measure had been defeated by vote at a town meeting. We do not discuss other possible infirmities in the referendum vote. However, in light of the answer that we give, other infirmities are immaterial.[4]

---

feated by vote at a town meeting. On January 27, 1976, the defendants filed an answer asking the court to declare valid the vote taken at the referendum election on December 15, 1975, because St. 1954, c. 660, allows a referendum on a measure upon which a vote was taken at a town meeting whether the measure was passed or defeated. According to the docket entries, no further action has been taken in the case.

In response to our invitation to interested persons to file briefs, we received briefs from the town counsel of the town of Hopkinton and from the plaintiffs in the pending civil action.

[3] We accept a vote "to have the Board of Selectmen petition the General Court requesting the enactment of . . . [a] special act" as satisfying the requirement of § 8 that the petition be "filed or approved" by the voters or the town meeting.

[4] In offering our opinion on this issue, one that has been raised in the course of private litigation, we caution that the answer we give is in our capacity as counselor to a coördinate branch of our government

The critical language of St. 1954, c. 660, is: "Any vote, except a vote to adjourn or authorizing the borrowing of money in anticipation of the receipt of taxes for the current year, passed at any town meeting, shall not be operative until the expiration of five days . . . . If, within said five days, a petition, signed by not less than ten per cent of the registered voters of the town . . . is filed with the selectmen asking that the question or questions involved in such a vote be submitted to the registered voters of the town, then the selectmen . . . shall forthwith call a special meeting for the sole purpose of presenting to the registered voters the question or questions so involved." The question that we must answer is whether the words "vote . . . passed," as used in the statute, include a negative vote on a matter within the scope of a warrant article, as well as an affirmative vote, thereby rendering negative town meeting action subject to a voter referendum.

The words "vote . . . passed" in St. 1954, c. 660, are ambiguous. See R. B. Johnson & others, Town Meeting Time 71, esp. n.10 (1962). They could be construed to refer to a vote not to take specific action as well as to a vote to take affirmative action on a proposition before a town meeting. We think, however, that those words are intended to refer only to an affirmative vote, one which calls for action, and not to a negative town meeting vote. We find support for this conclusion in St. 1954, c. 660, itself and in the absence of language which appears in other representative town meeting acts allowing voter consideration of measures rejected at a town meeting.

A common understanding in a legislative context of the words "vote . . . passed" is a vote which approves of specific legislation. Statute 1954, c. 660, has language which tends to support this interpretation. A "vote . . . passed" is not to be operative until the expiration of five days and, unless a referendum petition is filed, "shall become operative and effective at the expiration of said period." This language

and is not binding on the parties to that litigation. See *Opinion of the Justices,* 5 Met. 596, 597-598 (1844).

suggests that a "vote ... passed" will be one which under-
takes to effect a change and is not one supporting no
change. The title of St. 1954, c. 660, to which it is appropri-
ate to turn in trying to resolve any ambiguity in St. 1954,
c. 660 (see *Bellows Farms, Inc.* v. *Building Inspector of
Acton,* 364 Mass. 253, 258-259 [1973]; *Commonwealth* v.
*Jarrett,* 359 Mass. 491, 495 n.5 [1971]; *Massachusetts Soc'y
for the Prevention of Cruelty to Animals* v. *Commissioner
of Pub. Health,* 339 Mass. 216, 223 [1959]), supports the
view that a "vote ... passed" is one which takes affirmative
action. The title refers to a "referendum" concerning cer-
tain town meeting votes. The word "referendum" normally
signifies that a measure approved by a legislative body is
to be submitted to the voters for their acceptance or rejec-
tion. See G. L. c. 43, § 42, concerning a referendum in a city
after final passage of any "measure," which is defined in
G. L. c. 43, § 37, as an "ordinance, resolution, order or vote
passed." The word "referendum" does not contemplate
that a measure which has been defeated by a legislative
body can be reactivated and passed by an affirmative vote
by the people. See 5 E. McQuillin, Municipal Corporations
§ 16.53 (3d rev. ed. 1969). "[A]n attempt to enact a mea-
sure over the opposition of a legislative body sounds more
like 'initiative' than 'referendum.' " *Fantini* v. *School
Comm. of Cambridge,* 362 Mass. 320, 323-324 (1972). The
use of the term "referendum" suggests strongly that St.
1954, c. 660, was intended to allow for voter review only of
measures that had been acted on affirmatively by the town
meeting.

If the Legislature had intended St. 1954, c. 660, to au-
thorize voter approval of a proposition defeated at a town
meeting in Hopkinton, that act could have referred to any
vote passed *or rejected* by a town meeting. In 1954, when
the Hopkinton special act was passed, there were repre-
sentative town meeting acts which made express reference
to voter action on proposals rejected at town meeting as
well as those "passed." See, e.g., St. 1928, c. 167, § 8 (Win-
chester); St. 1929, c. 215, § 8 (Lexington); St. 1932, c.
279, § 8 (Needham); and St. 1936, c. 39, § 9 (Amesbury),

all of which provide: "No final vote of any representative town meeting passing or rejecting a measure under any article in the warrant, except . . ., shall be operative until . . . ." See St. 1936, c. 10, § 8 (Amherst) to the same effect with slightly different wording. See also St. 1959, c. 432, § 28 (Auburn), enacted since the Hopkinton act, referring to a town meeting vote "either passing or rejecting a measure." The use of the words "vote . . . passed" in St. 1954, c. 660, and the absence of any reference to a vote rejected, indicates a choice to limit referendum votes to affirmative town meeting action. Other municipalities have representative town meeting acts similar in this respect to St. 1954, c. 660. See, e.g., St. 1926, c. 36, § 8 (Wakefield); St. 1933, c. 13, § 8 (Webster); St. 1948, c. 419, § 5, amending St. 1926, c. 358, § 8 (Dedham); and St. 1949, c. 143, § 9 (Framingham).

We conclude that the petition in support of House No. 4463 was not filed or approved by the town meeting of Hopkinton. We turn then to the question whether the petition was "filed or approved by the voters" of Hopkinton as those words are used in § 8 of the Home Rule Amendment.

In our opinion, the vote did not constitute a petition "filed or approved by the voters" of Hopkinton. That vote was not taken pursuant to any statutory authorization. There is no general law prescribing procedures to be followed in obtaining the sentiment of voters on a proposed petition for enactment of a law relating to municipality.[5]

---

[5] Such a general law was proposed in 1966 in the First Report of the Special Commission on Implementation of the Municipal Home Rule Amendment to the State Constitution, 1966 Senate Doc. No. 846, 26-28. From time to time that Commission has renewed its proposal that procedures be defined for requesting the enactment of special laws under § 8 (1) of the Home Rule Amendment. See 1967 Senate Doc. No. 1547, 22. In 1969, that Special Commission in its Fourteenth Report made a detailed suggestion for implementing local petitions under § 8. See 1969 Senate Doc. No. 1271, 4-5.

General Laws c. 3, § 8A, inserted by St. 1973, c. 896, provides that a petition filed pursuant to § 8 of the Home Rule Amendment must indicate the number voting for and the number voting against, if such a vote is tabulated. That section does not prescribe any procedure to be followed in obtaining the voters' approval of a petition.

We are aware of no special act applicable to Hopkinton which would permit its voters to express their views concerning a proposed special act affecting that town. Although we cannot say that a local petition, developed without the support of enabling legislation, can never be valid under § 8 of the Home Rule Amendment, this petition which was an abortive product of town meeting procedures is not such a petition.[6] We do not regard the referendum vote, which was ineffective under St. 1954, c. 660, as nevertheless effective as a petition of the voters under the general language of the Home Rule Amendment. The referendum vote, whose legality was challenged in court even before the vote was taken, was not intended to be a petition of the voters.

Because we are of the opinion that the petition accompanying House No. 4463 was not a petition properly filed under § 8 of the Home Rule Amendment, we answer the question, "No."

EDWARD F. HENNESSEY
PAUL C. REARDON
FRANCIS J. QUIRICO
ROBERT BRAUCHER
BENJAMIN KAPLAN
HERBERT P. WILKINS
PAUL J. LIACOS

---

[6] For example, a home rule petition for special legislation affecting a municipality signed by a majority of the municipality's voters might have a valid existence without implementing legislation.