CLINTON B. NEWELL & others[1] vs. RENT BOARD OF
PEABODY & others.[2]

Essex. April 2, 1979. — July 5, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

Constitutional Law, Home Rule Amendment, Equal protection of
laws. Rent Control. Municipal Corporations, Home rule, Rent
control. Due Process of Law, Rent control.

Statute 1976, c. 131, a special act authorizing the city of Peabody, by
ordinance, to regulate rents for the use and occupancy of mobile
home park accommodations, was properly enacted pursuant to the
Home Rule Amendment even though the city council and mayor
gave approval of a general petition authorizing the drafting and
filing of legislation on the subject and did not propose specific legis-
lation and even though the bill as originally filed in response to the
city's petition was not a special act relating only to the city of
Peabody and made no reference to the city's approval of the propos-
al as a home rule petition. [446-448]
Statute 1976, c. 131, a special act authorizing the city of Peabody, by
ordinance, to regulate rents for the use and occupancy of mobile
home park accommodations, was not unconstitutional by virtue of
the fact that it did not contain a time limitation on the term of its
operation. [448-449]
There was no merit to a claim by owners of mobile home parks in the
city of Peabody that St. 1976, c. 131, authorizing the city to regulate
rents for the use and occupancy of mobile home park accommoda-
tions, denied them equal protection of the laws. [449-450]

CIVIL ACTION commenced in the Supreme Judicial
Court for the county of Suffolk on May 1, 1978.

[1] The plaintiffs are licensed owners of eleven mobile home parks in
Peabody. There are approximately 700 mobile home park spaces in
that city, almost all of which are owned by the plaintiffs.

[2] The other defendants are the city, its city clerk, its director of
public health, and its board of health.

On transfer to the Superior Court the case was heard by *Linscott*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*John A. McNiff* for the plaintiffs.

*Ronald D. D'Avolio*, Assistant City Solicitor, for the defendants.

WILKINS, J. The plaintiffs challenge the validity of an ordinance of the city of Peabody, regulating mobile home park rents and evictions, enacted pursuant to authority purportedly granted by a special act of the Legislature. St. 1976, c. 131. They filed a complaint seeking a declaration that the ordinance is unconstitutional because the special act was not properly enacted pursuant to the Home Rule Amendment (art. 2 of the Amendments to the Constitution of the Commonwealth as amended by art. 89 of those Amendments). They also contended that the special act denies them due process of law because it was not enacted expressly as a temporary measure and that the special act and the ordinance deny them equal protection of the laws. A judge of the Superior Court rejected these contentions and entered a judgment declaring that the special act was properly enacted and that the ordinance was constitutional. We granted the plaintiffs' application for direct appellate review and now affirm the judgment.

On October 23, 1975, the Peabody city council voted to request the city's elected representatives to draft and file legislation that would permit the city "to enact an ordinance for the local control of rents and evictions with respect to mobile homes and housing in [the] city because of excessive, abnormally high and unwarranted rental increases recently imposed by some owners of mobile home parks" in the city. No proposed legislation then existed. As is more fully explained later in this opinion, a State representative filed a bill proposing an amendment to the General Laws to regulate rent increases in all licensed mobile home parks in the Commonwealth; that

bill was referred to a committee of the Legislature; a new bill applicable only to Peabody was reported out of that committee; and that proposed bill, with a change of no significance to this case, became St. 1976, c. 131.

The act recites that the General Court found "a serious public emergency" in Peabody "with respect to the housing of a substantial number of the citizens of [Peabody], which emergency has been created by excessive, abnormally high and unwarranted rental increases imposed by some owners of mobile home parks located therein." The General Court further found that "unless mobile home park rents and eviction of tenants are regulated and controlled," there would be "serious threats to the public health, safety and general welfare of the citizens of Peabody." The act authorized the city, by ordinance, to regulate rents for the use and occupancy of mobile home park accommodations and to establish a rent board and minimum standards for the use and occupancy of mobile home park accommodations. The detailed provisions of the special act have no bearing on the issues raised in this case, except that the act contained no time limitation on its operation and provided that it would take effect on its acceptance by the city.

In January, 1977, acting pursuant to the authority purportedly extended by the special act, the city council adopted and the mayor approved an ordinance regulating mobile home park accommodations and evictions. The ordinance contained a finding of an emergency substantially in the same form as the finding incorporated in the special act. The details of the ordinance are not significant, except that the ordinance does not specify the duration of its effectiveness.

We turn successively to the plaintiffs' claims that (1) the special act was not properly enacted under the Home Rule Amendment; (2) the act denies the plaintiffs due process of law because it contains no express limitation on the term of its operation; (3) the act and the ordinance deny the plaintiffs equal protection of the laws;

and (4) the judge improperly admitted certain testimony of counsel to the House Committee on Bills in the Third Reading.

1. Although the procedures followed in the adoption of the special act are no model of how to present a home rule petition, the special act was properly adopted under § 8 of the Home Rule Amendment. Under § 8, the Legislature may act in relation to a particular city by a special law "enacted (1) on petition filed or approved by . . . the mayor and city council . . . with respect to a law relating to that city." The Home Rule Amendment does not prescribe any particular form or procedure to be followed and, although the Legislature could do so, it has not.[3]

The mayor and the city council did not file a petition with the Legislature but they did *approve* a petition.[4] The city council vote of October 23, 1975, that the city's elected representatives draft and file necessary legislation to permit the city to enact an ordinance controlling rents and evictions with respect to mobile homes and housing was the city's approval of a petition to the Legislature for a special act on that subject. *Opinion of the Justices*, 370 Mass. 879, 881 n.3 (1976).[5]

---

[3] The Legislature has declined to act on proposed legislation concerning procedures to be followed in filing home rule petitions. See *Opinion of the Justices*, 370 Mass. 879, 884 n.5 (1976).

[4] The motion passed the city council unanimously. The mayor's signature appears on the record of the council's vote. Peabody operates under a Plan B form of government. The mayor's signature on the record of the council's action constitutes approval. See G. L. c. 43, § 55, made applicable to Plan B cities by G. L. c. 43, § 63.

[5] In that opinion, the Justices accepted a vote " 'to have the Board of Selectmen petition the General Court requesting the enactment of . . . [a] special act' as satisfying the requirement of § 8 that the petition be 'filed or approved' by the voters or the town meeting." 370 Mass. at 881 n.3.

Such a general approval might, of course, create problems for a municipality. With it, the municipality loses that control over the form and substance of the resulting legislation that it could have retained by proposing specific legislation and by indicating its willingness or unwillingness to accept variations consistent with its general objectives. See *Opinions of the Justices*, 356 Mass. 775, 791 (1969). Here the city council vote was only a general request for authority to enact a city ordinance, and the threat of any legislative imposition on the city was insignificant.[6]

A further question arises because, although the city appears to have requested a special act, the bill filed by the State representative on behalf of the city was not a proposed special act relating to Peabody and made no reference to the city's approval of the proposal as a home rule petition. The bill (1976 House Doc. No. 4327), as filed, sought to amend the General Laws to regulate rent increases for "occupancy of a mobile home space." That bill was referred to the Committee on Commerce and Labor, and, after the Legislature received a record of the city council's vote of October 23, 1975, and the mayor's approval, that committee reported a new bill (1976 House Doc. No. 4771) as a proposed special act relating only to Peabody. The new bill was thereafter enacted as St. 1976, c. 131, substantially as reported out of committee.

The significant circumstances are that the city approved a petition for a special act and that the Legisla-

---

[6] The special act contained a provision that the act was to be effective only on acceptance by the city. Such an approval comes too late in the process to be treated as approval of a home rule petition and cannot be treated as a ratification of any defects in the process. The acceptance requirement was unnecessary in any event because the special act could have had no consequence until the city adopted an ordinance.

ture thereafter responded accordingly. The circumstances that the bill as initially filed, but not as enacted, may not have conformed to the city's request should not invalidate the special act. Local approval occurred and was communicated to the Legislature before the special act was passed. If a municipality wishes to write a "blank check" to the Legislature, specifying only the scope of its public objective, the purpose of the Home Rule Amendment — that a special act relating to a single municipality be locally initiated — is fully served.

2. The plaintiffs argue that the special rent control act violates their right to due process of law under arts. 1 and 10 of the Declaration of Rights of the Constitution of the Commonwealth and under the Fifth and Fourteenth Amendments to the Constitution of the United States because the absence of a time limitation results in a taking of their property without just compensation. The plaintiffs do not challenge the findings by the Legislature and the city council that an emergency existed as to rents in and evictions from mobile home park accommodations in Peabody at the time these legislative bodies voted, nor do they claim that the emergency has ceased to exist.[7]

We are aware of no case holding that a rent control statute is unconstitutional because it lacks a provision for its termination after a certain period of time. Compare *Mayo* v. *Boston Rent Control Adm'r*, 365 Mass. 575, 585 n.3 (1974) (Tauro, C.J., dissenting), where it is said that "a time limitation is constitutionally required." A time limitation is constitutionally required only in that the regu-

---

[7] Acts concerning rent control in Massachusetts municipalities in general have contained limitations on the terms of their operation. See, e.g., St. 1953, c. 434, § 14; St. 1970, c. 842, § 13. The 1970 act concerning the regulation of rents in Brookline, however, did not state a limited period of effectiveness. See St. 1970, c. 843.

lation of rents may not continue beyond the emergency. The continuing existence of an emergency is a question that may be presented for further consideration, not only to the Legislature and the city, but also to the courts. *Prescott* v. *Secretary of the Commonwealth,* 299 Mass. 191, 200-204 (1938). *Chastleton Corp.* v. *Sinclair,* 264 U.S. 543, 547-548 (1924). However, a provision for "self-destruction" is not a constitutionally required element of a rent control statute or regulation.

The plaintiffs' argument that the ordinance and the special act result in an unconstitutional taking of their property cannot be accepted. There is no showing that the rents allowed under the ordinance are confiscatory; indeed, the record does not even demonstrate that any request for a rent increase has been denied or that any request for a rent decrease has been granted.

3. There is no merit to the plaintiffs' claim that the singling out of mobile home park accommodations in Peabody is a denial of equal protection of the laws. The burden on the plaintiffs is an onerous one (*Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 541 [1974]), requiring a showing that there was no rational basis for the classification (*Paro* v. *Longwood Hosp.,* 373 Mass. 645, 649-650 [1977]; *Commonwealth* v. *Petralia,* 372 Mass. 452, 455-459 [1977]; *Pinnick* v. *Cleary,* 360 Mass. 1, 27-28 [1971]). The Legislature could have concluded that a special problem existed in the operation of mobile home parks in Peabody, requiring the regulation of rents and evictions. That problem may not exist at all or to the same degree in other landlord-tenant relationships in that city or in other municipalities. The Legislature has seen fit to impose regulations specifically applicable to the operators of mobile home parks. See G. L. c. 140, §§ 32A-32Q. We have upheld classifications in rent control regulations dif-

ferentiating among municipalities and among particular classes of individuals within a municipality. *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 693-700 (1971). *Russell* v. *Treasurer & Receiver Gen.,* 331 Mass. 501, 508 (1954). Nothing in this case calls for a different result.

The plaintiffs' argument that art. 10 of the Declaration of Rights prohibits the allegedly favorable treatment accorded to their tenants and to mobile home park owners in other municipalities adds nothing to their claim of denial of equal protection of the laws. See *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.,* 366 Mass. 734, 744 (1975).

4. The plaintiffs argue that the judge improperly admitted evidence from counsel to the House Committee on Bills in the Third Reading, contending that he was permitted to give opinions concerning the interpretation of the Home Rule Amendment. None of the questions called for an interpretation of the Amendment. In any event, our conclusions are not based on that testimony, and, consequently, its admission was not prejudicial to the plaintiffs.

*Judgment affirmed.*