HAMPSHIRE VILLAGE ASSOCIATES & another[1] *vs.* DISTRICT
COURT OF HAMPSHIRE & another.[2]

Hampshire.  May 5, 1980. — July 15, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Constitutional Law,* Equal protection of laws.  *Due Process of Law,*
Vagueness of statute, Bond.  *Practice, Civil,* Bond.  *Landlord and
Tenant,* Security deposit.

In the circumstances, a landlord was not denied equal protection or due
process by the fact that G. L. c. 218, § 23, required him to give bond
in treble amount in order to pursue an appeal from a District Court
finding which awarded a tenant multiple damages in an action for
return of security deposit pursuant to c. 186, § 15B.  [150-155]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on February 22, 1979.

On transfer to the Superior Court Department, the case
was heard by *Smith,* J., on a motion for judgment on the
pleadings.

The Supreme Judicial Court granted a request for direct
appellate review.

*Paul W. Johnson,* Assistant Attorney General, for the
District Court of Hampshire.

*Richard M. Howland* for the plaintiffs.

KAPLAN, J.  Hampshire Village Associates (landlord), a
limited partnership owning a residential building in
Amherst, leased an apartment to Matthew Zacarian (ten-
ant)[3] for the period August 1, 1977, to July 31, 1978, and
received $533 from the tenant as a security deposit.  Appar-
ently the tenant quit the apartment in early August, 1978,

---

[1] Gene Ruhlander.

[2] Matthew Zacarian.

[3] In fact Zacarian was a cotenant with two other men.

but it was not until September 18, 1978, that the landlord remitted $279.01 to the tenant, representing the security deposit plus accrued interest less an amount for repairs, replacements, and unpaid rent claimed to be chargeable to the tenant. Within the week, the tenant commenced a small claims proceeding in the District Court of Hampshire against the landlord (and one Ruhlander, manager) claiming damages pursuant to G. L. c. 186, § 15B. This section states that for violation of certain provisions thereof, including a provision requiring a landlord to return a security deposit, or balance, within thirty days after the termination of a tenancy, "the tenant shall be awarded damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five per cent from the date when such payment became due, together with court costs and reasonable attorney's fees." *Id.* at (7). After bench trial, there was a finding for the tenant in multiple amount.[4]

Desiring to appeal to the Superior Court for trial by jury, the landlord tendered to the clerk of the District Court, with the filing fee, a bond for $100 to cover costs, which is the usual bond required on appeal from small claims judgments (provision of G. L. c. 218, § 23, first par., inserted by St. 1974, c. 166, § 1). The clerk, however, declined to enter the appeal, and referred the landlord to that part of the statute (further provision of § 23, first par., inserted by St. 1977, c. 979, § 2) which states that on landlord's appeal from an adverse finding in an action brought by a tenant pursuant to G. L. c. 186, § 15B, including an action for

---

[4] The District Court, apparently unaware of the amendments of § 15B here relevant, effective September 1, 1978, as to existing as well as future security deposits (see St. 1977, c. 979, §§ 1, 2; St. 1978, c. 553, §§ 2, 3), applied the earlier text prescribing double damages (see St. 1970, c. 666, § 1, as amended by St. 1972, c. 639, § 1). That mistake would not be repeated on appeal of the small claims judgment to the Superior Court, and the present declaratory action concerns itself properly with the current version of § 15B and the corresponding treble bond provisions of G. L. c. 218, § 23, similarly effective on September 1, 1978 (see St. 1977, c. 979, §§ 2, 4).

return of security deposit, "bond shall be given in an amount equal to three times the amount of the security deposit or balance thereof to which the tenant is entitled, plus interest at the rate of five per cent from the date when such payment became due, together with court costs and an amount equal to a reasonable attorney's fee for service which had been performed by an attorney, if any, or which may be expected to be performed by an attorney during the pendency of the appeal."

The landlord declined to give such a bond. Instead the landlord (joining Ruhlander as plaintiff) commenced the present action against the District Court and Zacarian,[5] praying a declaration that the quoted bond statute is unconstitutional under the equal protection clause of the Federal Constitution and the cognate provision of the Commonwealth Constitution. Added was a claim that due process was violated by reason of the vagueness of the same statute. A motion by the defendant District Court to dismiss the complaint for failure to state a claim was denied by the judge of the Superior Court, and the defendant answered, appending a record of the small claims proceeding. The plaintiffs' motion for judgment on the pleadings was then allowed. We granted the defendant District Court's motion for direct appellate review.[6] The judgment appealed from was erroneous, and will be reversed.

1. There is no contention that the treble damage provision of G. L. c. 186, § 15B, is itself invalid. We find in our statute book a number of examples of civil causes in which the permitted recoveries are multiples of the actual damages found to have been suffered:[7] in those degrees the

---

[5] Zacarian did not answer the complaint but filed an appearance a month after the Superior Court judge ruled in the present case.

[6] By agreement, the judgment forbidding the District Court to "requir[e] a bond greater than $100.00 in any small claims appeal" was stayed pending the present appeal.

[7] See, e.g., G. L. c. 40, § 39G (wilful injury to municipal water facilities); G. L. c. 130, § 24 (damage to shellfish or fishery resources); G. L. c. 221, § 51 (attorney's failure to relinquish client's money on demand);

Legislature has declared its displeasure with the described acts, sought to deter their commission, and encouraged vindicative lawsuits if wrongdoing was not stemmed. As the Court said in *Missouri Pac. Ry.* v. *Humes,* 115 U.S. 512, 523 (1885): "The power of the State to impose fines and penalties for a violation of its statutory requirements is coeval with government, and the mode in which they shall be enforced, whether at the suit of a private party, or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion. The statutes of nearly every State of the Union provide for the increase of damages where the injury complained of results from the neglect of duties imposed for the better security of life and property, and make that increase in many cases double, in some cases treble, and even quadruple the actual damages. And experience favors this legislation as the most efficient mode of preventing, with the least inconvenience, the commission of injuries. The decisions of the highest courts have affirmed the validity of such legislation. The injury actually received is often so small that in many cases no effort would be made by the sufferer to obtain redress, if the private interest were not supported by the imposition of punitive damages." The singling out for such civil penalties of particular conduct, especially conduct in the economic sphere, raises no question under the equal protection guaranties — unless, perchance, the selection was bereft of a plausible reason. See *Newell* v. *Rent Bd. of Peabody,* 378 Mass. 443, 449 (1979); *Paro* v. *Longwood Hosp.,* 373 Mass. 645 (1977); *Ortwein* v. *Schwab,* 410 U.S. 656, 660 (1973). Cf. *Marcoux* v. *Attorney Gen.,* 375 Mass. 63, 65 n.4 (1978).

Section 15B is not without reason. The question of security deposits has long been agitated; the problems are well known;[8] and the Legislature has attempted progres-

---

G. L. c. 231, § 85J (fraud or deceit in sale of personal property); G. L. c. 266, § 141 (misrepresentation in sale of odometer).

[8] See Blumberg & Robbins, Beyond URLTA: A Program for Achieving Real Tenant Goals, 11 Harv. C.R.-C.L.L. Rev. 1, 18-19 n.93 (1976).

sively to deal with them. In 1969, § 15B provided on the point merely that a landlord was not to require a security deposit in excess of two months' rent. St. 1969, c. 244. By September 1, 1978, when that section reached its present form (see St. 1978, c. 553, §§ 2, 3), the legislative controls were much elaborated. A security deposit is not to exceed one month's rent, and is to remain the tenant's property and be held as a fund in trust in an interest-bearing account in a bank whose name and location must be notified to the tenant; and there is provision for payment of interest to the tenant on certain terms. §§ 15B (1) (b) (iii), (3). A landlord receiving the deposit is to furnish the tenant with a written statement of the condition of the premises prefaced by a statutory warning to the tenant to scrutinize the list and object to it if incorrect. Id. at (2) (c). Record keeping by the landlord regarding condition, repairs, and so forth is obligatory. At (2) (d). There is elaborate regulation of the handling of a deposit upon transfer by the landlord of his interest in the premises. At (5). A landlord is bound to return the deposit to a tenant within thirty days after termination of occupancy, deducting only unpaid rent, any unpaid increase in real estate taxes chargeable to the tenant under an escalation clause, and a reasonable amount necessary to repair damages by the tenant (reasonable wear and tear excluded), the damage and repairs to be itemized under oath, and cost of repairs to be supported by evidence such as estimates and bills. At (4). Finally, stated violations of § 15B result in forfeiture of the landlord's right to retain any portion of the security deposit, or, in any action by a tenant to recover a deposit, to counterclaim for damage to the premises. At (6). And three of these violations — failure to place the deposit in a bank account, to transfer the deposit to a successor in interest, or to return the deposit or balance timely to the tenant on termination of tenancy — fall to the treble damage provision quoted above. At (7). Of § 15B it is said that "[b]y limiting the freedom of landlords and tenants to contract in this regard [as to security deposits], the Legislature manifested a concern for the welfare of

tenants in residential property who, as a practical matter, are generally in inferior bargaining positions and find traditional avenues of redress relatively useless; i.e., the legal expense of chasing a security deposit would be more than the amount of the deposit." *Goes* v. *Feldman,* 8 Mass. App. Ct. 84, 91 (1979).

2. If the § 15B provision for treble damages is taken to be free of constitutional doubt, then it follows with high probability that the provision of G. L. c. 218, § 23, for an appeal bond in roughly similar amount to protect that recovery is likewise constitutional. A State "may properly take steps to insure that an appellant post adequate security before an appeal to preserve the property at issue [or] to guard a damage award already made." *Lindsey* v. *Normet,* 405 U.S. 56, 77 (1972). More specifically, a State "has broad authority to provide for the recovery of double or treble damages in cases of illegal conduct that it regards as particularly reprehensible, even though posting an appeal bond by an appellant will be doubly or triply more difficult than it otherwise would be." *Id.* at 78.

As indicated, the same motives which might lead a Legislature to multiply the damage recovery could persuade it to require a corresponding appeal bond. In the present case, moreover, the appeals for which the protective bond is legislated arise from judgments in small claims proceedings where the jurisdictional limit is $750.[9] As to litigation over relatively small amounts, the Legislature could reasonably have seen a special need for measures that would chill frivolous appeals, discourage dilatory tactics where appeal was taken, and ensure full final recovery if the appeal was lost. See *Paro* v. *Longwood Hosp., supra* at 653; *Damaskos* v. *Board of Appeal of Boston,* 359 Mass. 55, 64 (1971).[10]

---

[9] Meaning the basic amount before multiplication. See G. L. c. 218, § 21, next-to-last sentence.

[10] The landlord's case would not be improved by argument in terms of undue burdening of its right to a jury trial. See *H.K. Webster Co.* v. *Mann,* 269 Mass. 381, 385 (1929); *Paro* v. *Longwood Hosp.,* 373 Mass. 645, 654 (1977).

The plaintiff landlord sees unconstitutional discrimination in requiring landlords to give the treble bond on appeal from small claims judgments in the security deposit cases, while making no such demand on appellants in other types of small claims cases outside the landlord-tenant field. But, beyond the connection, already mentioned, between the authorized recovery and the bond on appeal, justification can be found in the proposition that "[t]here are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants." *Lindsey* v. *Normet, supra* at 72.

Our decision should be read in the light of the facts of the case. We need not express an opinion whether a bond in treble amount can be demanded of a landlord in necessitous circumstances who has a seemingly meritorious appeal. Cf. *Gugino* v. *Harvard Community Health Plan,* 380 Mass. 464, 469 (1980).[11] Nor need we say whether the treble bond provision can be constitutionally applied to a small claims judgment in single, not treble, amount.[12] And, putting constitutional problems to one side, we are not prepared to enlarge on the relation, if any, between G. L. c. 186, § 15B,

---

[11] A plaintiff, seeking to pursue a medical malpractice claim after an adverse finding by a malpractice tribunal, is ordinarily required to post a bond in stated amount, but the judge may scale down the amount in case the plaintiff is indigent. G. L. c. 231, § 60B. In *Gugino,* on the assumption (contrary to our holding) that the adverse finding was correct, we thought the judge had abused his discretion in not reducing the bond sufficiently.

General Laws c. 218, § 23, has a provision for waiving the $100 bond, usually required on appeal from small claims judgments, where a defendant has insufficient funds and the appeal is not frivolous. But there is no such provision directed to appeals in the treble damage cases of § 15B.

[12] This possibility exists because the treble bond provision applies nominally to judgments in single amount that may be recovered under § 15B, e.g., for failure to furnish the tenant an itemized list of damages within thirty days of the termination of occupancy (§ 15B [6] [b]). This may raise a possible constitutional question under one aspect of *Lindsey* v. *Normet,* 405 U.S. 56, 79 (1972).

and G. L. c. 93A, §§ 2 (*c*), 9, so far as the latter may apply to security deposit claims.[13]

3. The landlord's due process argument protests the alleged fatal obscurity of G. L. c. 218, § 23. But at most the landlord is able to point to possible problems of interpretation, and it remains to be seen whether or in what respects any such problems will present themselves at or after trial in the Superior Court. See *United States* v. *Mazurie,* 419 U.S. 544, 550 (1975). The fact that a statute, particularly a civil statute, may require interpretation at some points does not render it unconstitutional at the threshold for vagueness or ambiguity; otherwise it would be nearly impossible to launch regulatory statutes of any complexity. Cf. *Commonwealth* v. *Gustafsson,* 370 Mass. 181, 187 (1976). We add that the alleged ambiguities here are not connected so much to the standards of conduct imposed, as to the details of enforcement. See *Commonwealth* v. *Gallant,* 373 Mass. 577, 580-581 (1977); *Jordan* v. *DeGeorge,* 341 U.S. 223, 230 (1951); *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 (1926).

The judgment is reversed and a judgment will be entered declaring the questioned statutes to be constitutional in their present application.

*So ordered.*

---

[13] Pursuant to § 2 (*c*) of G. L. c. 93A, the consumer protection statute, the Attorney General has issued a regulation regarding late return of a security deposit as an unfair practice. 940 Code Mass. Regs. § 3.17 (4) (c) (1978).