**Ben LOETERMAN, et al., Plaintiffs,**

v.

**TOWN OF BROOKLINE, et al., Defendants.**

Civ. A. No. 80–670–MC.

United States District Court, D. Massachusetts.

Nov. 6, 1981.

---

Philip S. Lapatin, Gaston, Snow & Ely Bartlett, Mitchell S. Ross, Bernkopf, Goodman & Baseman, Boston, Mass., for plaintiffs.

David Lee Turner, Janet B. Fierman, Cathleen C. Cavell, Brookline, Mass., for Town of Brookline.

Roger R. Lipson, Brookline, Mass., for Rent Control Bd., Town of Brookline.

Gerald J. Caruso, Asst. Atty. Gen., Boston, Mass., for intervenor Atty. Gen. of Mass.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

This matter is before the court on the parties' cross motions for summary judgment. The plaintiffs are Ben and Mardi Loeterman, purchasers of a condominium unit in Brookline, Massachusetts, and the defendants are the Town of Brookline (the Town) and the Rent Control Board of Brookline (Rent Control Board). The Attorney General of Massachusetts has also intervened in this action as a defendant. The plaintiffs seek a declaration that the Town's bylaw amendment prohibiting owners of individual condominium units from recovering possession of their units from tenants under certain conditions is unconstitutional as being a violation of their Fifth and Fourteenth Amendment rights, and an injunction against the enforcement of the bylaw amendment by the Town or its agents or employees. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(3).

The bylaw amendment (the so-called Ban Amendment) and its predecessors were discussed by the court in the case of *Chan v. Town of Brookline*, 484 F.Supp. 1283 (D.Mass.1980), wherein the court denied preliminary injunctive relief against the Town with respect to plaintiffs who had purchased their condominium prior to the Ban Amendment's enactment by the Town. The present action was consolidated with the *Chan* case in November, 1980. Before reaching the issue of the constitutionality of the Ban Amendment with respect to the Chans, the *Chan* action was dismissed for mootness in December, 1980, as the tenant occupying the Chans' unit voluntarily vacated the premises. Consequently, the court is not called upon in the instant case to decide the constitutionality of the ordinance as applied to persons who purchased their units with the intent to occupy them in accordance with then applicable eviction

procedures (the Six Plus Six Amendment), but who may be subject to a permanent prohibition against evicting tenants in possession by the subsequent enactment of the Ban Amendment.

The gist of the Ban Amendment, amending section 9(a)(8) of Article XXXVIII of the Town bylaws (Rent and Eviction Control Bylaw), is that the owner of an individual condominium unit is precluded from recovering possession of his unit from a tenant who has occupied it continuously since the time before the recording of the master condominium deed.[1] The tenant has the equivalent of a life tenancy in the property so long as the amendment is in effect, and the owner may only recover possession for the use and occupancy of himself or other family members designated in the bylaw provision upon a tenant's voluntary departure or death. The Ban Amendment was approved at a town meeting on May 7, 1979. It was enacted as part of the Town's Rent and Eviction Control Bylaw and applies only to controlled rental units as defined in section 3(b) of Article XXXVIII. The amendment became effective after approval by the Attorney General for the Commonwealth of Massachusetts on August 14, 1979.

There is no dispute among the parties as to the facts relating to the Loetermans' purchase of the condominium and its occupancy by a tenant at the time of sale. The plaintiffs entered into a purchase and sale agreement on March 29, 1979 to purchase the unit for $35,000 in a rent controlled building for the purpose of occupying it as their personal residence. They took title to the unit on May 17, 1979, ten days after the Ban Amendment was passed at the Brookline town meeting. Plaintiffs do not dispute that they knew of the enactment of the amendment at the time they took title to their unit. At the time of sale the unit was, and continues to be occupied by a tenant who has lived there continuously since a time prior to the recording of the master condominium deed. Plaintiffs still desire to occupy the unit for dwelling purposes. The tenant, however, has refused to vacate the premises voluntarily.

Section 6 of the bylaw provides that the rents established for controlled rental units shall be adjusted "to assure that rents ... are established at levels which yield to landlords a fair net operating income for such units." Prior to November 27, 1979, the tenant occupying the Loetermans' unit paid

1. The amendment was enacted as follows:

WHEREAS a serious public emergency with respect to a substantial and increasing shortage of rental housing accommodations, as declared in Chapter 843 of the Acts of 1970 and Article XXXVIII of the Brookline Bylaws, continues to confront the Town and its citizens, threatening the public health, safety, and welfare of its citizens, particularly families of low and moderate incomes and elderly persons on fixed incomes;

WHEREAS a rapid and increasing rate of conversion of rental housing to condominium ownership is exacerbating this shortage and causing severe hardship to rental housing occupants by reducing the supply of rental housing and raising the cost of housing so converted;

WHEREAS the loss of rental housing because of conversion to condominium ownership has created and will continue to aggravate the problems of housing its citizens, particularly families of low and moderate incomes and elderly persons on fixed incomes; and

WHEREAS the Town, after preliminary investigation of the issues, has appropriated a sum of money for an outside professional study of the effects of condominium conversion;

NOW, THEREFORE, Article XXXVIII of the Brookline Bylaws is hereby amended for the purpose of obtaining relief from the aforesaid conditions so that there is time for the community to study and consider long term solutions for this housing problem, as follows:

By amending paragraph (8) of Section 9(a), striking out the existing language and inserting in place thereof the following:

"(8) the landlord seeks to recover possession in good faith for use and occupancy of himself or his children, parents, brother, sister, father-in-law, mother-in-law, son-in-law, or daughter-in-law, except that no action shall be brought under this paragraph to recover possession of a condominium unit from a tenant who has occupied the unit continuously since a time prior to the recording of any master deed for the condominium;"

upon the condition that in the event this amendment is determined to be invalid, for any reason, the existing provision of paragraph (8) of said Section 9(a), which is amended hereby, shall continue in full force and effect.

a monthly rent of $315.00. On November 27, 1979, plaintiffs were granted a rent increase by the Brookline Rent Control Board of $96.00 per month, raising the monthly maximum rent to $411.00. Thereafter, on June 30, 1981, plaintiffs received a rent increase of $110.00 per month, increasing the monthly maximum rent to $521.00.

The plaintiffs argue that the amendment unlawfully effects a redistribution of property by transferring from the owner to the tenant the right to use the property in a particular way for a public purpose. *See South Terminal Corp. v. Environmental Protection Agency*, 504 F.2d 646, 679 (1st Cir. 1974). They do not dispute the existence of an increasing shortage of rental housing accommodations in the Town, exacerbated by a rapid and an increasing rate of conversion of rental units to condominiums, or that such a rental housing shortage poses a threat to the public health, safety, and welfare, particularly that of the elderly and low income households.[2] The thrust of their opposition to the Ban Amendment is that the amendment, unlike its predecessor, the "Six Plus Six" Amendment, effectively prohibits an owner from ever occupying his unit and that such a prohibition constitutes a "taking" of property violative of the Fifth and Fourteenth Amendments. According to plaintiffs, the fact that the Ban Amendment may operate to extinguish an owner's right of possession altogether distinguishes the present case from other cases where courts have upheld the government's right to prohibit particular uses of property, but where the owner nevertheless remains in possession or retains the right to use and occupy the premises he owns. Plaintiffs further urge that the Town's grant to the tenant of a right to occupy the premises indefinitely compels a property owner to dedicate his property indefinitely to the rental market, a practice held unlawful in another context in *Rivera v. R. Cobian Chinea and Co.*, 181 F.2d 974 (1st Cir. 1950).

The defendants and defendant-intervenor respond that the Ban Amendment does not operate as a taking of property in that the bylaw serves a legitimate public purpose of assuring an adequate supply of rental housing and allows purchasers of individual condominium units the right to receive rent and enjoy all other traditional incidents of ownership except occupancy. It is argued, that a prohibition of only one use does not render plaintiffs' property worthless so as to amount to a taking requiring compensation. Defendants also contend that the plaintiffs here, as distinguished from the property owner in *Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979), had no legitimate investment-backed expectation that has been thwarted by the Town. In this regard defendants focus upon the chronology of events surrounding the Loetermans' purchase of their unit.

The Fifth Amendment's prohibition against the taking of private property for a public purpose is applicable against a state and its political subdivisions through the Fourteenth Amendment. *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 122, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978). Recent "takings" cases indicate that there is no set formula for determining when governmental action results in a taking; rather, the particular circumstances in each case must be examined. *Kaiser Aetna v. United States*, 444 U.S. 164, 165, 100 S.Ct. 383, 385, 62 L.Ed.2d 332 (1979); *Penn Central Transportation Co. v. New York City, supra*, 438 U.S., at 124, 98 S.Ct. at 2659. Generally, "taking" analysis requires a weighing of private and public interests, as all governmental regulation by definition involves some curtailment of private rights to promote a public purpose. *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); *Andrus v. Allard*, 444 U.S. 51, 65, 100 S.Ct. 318, 326, 62 L.Ed.2d 210 (1979).

2. For a discussion of the legislative response elsewhere to the effects of condominium conversion, see Snyderman & Morrison, *Rental Market Protection Through the Conversion Moratorium; Legal Limits and Alternatives*, 29

DePaul L.Rev. 973 (1980); Schlein, *Government Regulation of Condominium Conversion*, 8 B.C.Env.Aff.L.Rev. 919 (1980); Comment, *The Condominium Conversion Problems: Causes and Solutions*, Duke L.J. 306 (1980).

■ *Penn Central Transportation Co. v. New York City* dictates that the court must scrutinize the character of the action and the nature and extent of the interference, both physical and economic, with rights "in the parcel as a whole". 438 U.S. at 130–131, 98 S.Ct. at 2662–2663. In connection with the court's assessment of the economic impact of the regulation at issue, attention is to be paid to the extent to which the regulation has interfered with the property owner's distinct investment-backed *expectations*. *Id.* at 124, 98 S.Ct. at 2659. *See Kaiser Aetna v. United States, supra,* 444 U.S., at 179–180, 100 S.Ct. at 392–393. The government need not compensate a person for denying him the right to use that which he has never owned. *Flynn v. City of Cambridge,* —— Mass. ——, 418 N.E.2d 335, 339 (1981).

■ The private interest asserted by the Loetermans is the right to use and occupy premises to which they lawfully took title and the correlative right to exclude others. The right to exclude has been recognized as an important element of private property ownership. *Kaiser Aetna v. United States, supra,* 444 U.S., at 179–180, 100 S.Ct. at 392–393. An examination of the facts in this case, however, leads me to conclude that this right is not compensable under the Fifth and Fourteenth Amendments. First of all, the Loetermans had no legitimate *expectation* of occupying their condominium at the time they purchased it. While the Loetermans entered into the purchase and sale agreement for the condominium unit before the Town enacted the Ban Amendment, the actual purchase of the property occurred ten days after the amendment was passed at the Brookline town meeting. Plaintiffs, therefore, were on notice that they would not be able to evict the tenant occupying the unit and reasonably knew or should have known that the continued use of their unit for rental housing was mandated by the Ban Amendment. Under these circumstances they had no legitimate expectation of occupying the unit themselves. While in some instances a transfer from an owner to another person of a particular use of property might be

viewed as a taking compensable under the Fifth and Fourteenth Amendments, *see South Terminal Corp. v. Environmental Protection Agency,* 504 F.2d 646, 679 (1st Cir. 1974), the facts do not support such a conclusion in the present action.

In connection with the Loetermans' argument that the Ban Amendment goes "too far" in restricting a well recognized element of private property ownership by preventing occupancy of the premises by the owners themselves, the court finds it significant that the Ban Amendment does not operate to deny the Loetermans an economically viable and reasonable use of their property. *See Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). Under the applicable rent control bylaws, plaintiffs here are entitled to a fair net operating income from their unit and retain other economic benefits ordinarily associated with the ownership of rental property. I am thus not persuaded that the Ban Amendment goes too far in restricting the owners' use of their property, particularly where there is no question that the amendment serves a legitimate public purpose of slowing the rate of reduction of rental housing accommodations in Brookline pending the Town's further study of the problem in consideration of long-range solutions to the increasing shortage of rental housing. While the Ban Amendment undeniably affects the present and future value of plaintiffs' property, I am not persuaded that the amendment unduly interferes with plaintiffs' rights so as to amount to a taking of property without just compensation.

Plaintiffs contend that the permanent nature of the Ban Amendment renders it confiscatory. In contrast to the "Six Plus Six" Amendment which preceded it and permitted evictions after a 12-month period, the current regulation has the potential for effecting a prohibition against occupancy by owners for the lifetime of the current tenant, a lifetime which in some instances may extend beyond that of the owners. The possibility remains that the amendment will not remain effective permanently, as its

necessity is premised upon the existence of a shortage of rental housing and the need to study the problem further and develop longterm solutions to the problem. If conditions change or the Town develops alternative means to meet the crisis, the Town may choose to revoke the amendment.[3] Whether or not such an eventuality comes to pass, the permanence of the prohibition against evicting the tenants designated in the bylaw does not render the amendment unconstitutional as applied to the Loetermans. As I have already concluded, they have no legitimate claim of a right to occupy the premises which the Town has denied since they knew that such a use would be forbidden at the time they purchased the property. For the duration of their owner-ship, moreover, they retain the right to use their property in an economically viable manner. Their rights in the property as a whole are not so substantially curtailed that a temporary or even permanent prohibition against their occupancy of the premises may be considered a compensable taking.

Accordingly, summary judgment is hereby entered in favor of the defendants, and plaintiffs' motion for summary judgment is denied.

---

**3.** As discussed in *Newell v. Rent Control Board of Peabody*, 378 Mass. 443, 392 N.E.2d 837, 840 (1979), the continuing existence of the emergency on which legislation which interferes with private property rights is founded might also be the subject to further consideration by the courts.